Rodger K. MARKLUND, Respondent,

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY,**
Petitioner, Appellant.

No. C1–86–456.

Supreme Court of Minnesota.

Feb. 13, 1987.

Richard C. Mollin, International Falls, for appellant.

John D. Undem, International Falls, for respondent.

KELLEY, Justice.

In a suit against his no-fault automobile insurer, a patron of a self-service gasoline station contends that injuries sustained by him when he slipped on ice and fell on the

station's concrete apron after filling and capping his car's gas tank arose out of the "maintenance" of a motor vehicle as the word "maintenance" is used in the Minnesota No-Fault Act. Minn.Stat. § 65B.46, subd. 1 (1986). A panel of the court of appeals agreed. Accordingly, it reversed a trial court summary judgment in favor of the no-fault insurer.[1]

We reverse.

Respondent, Rodger Marklund, refilled the gas tank of his automobile at a self-service gasoline station. After completing the refueling fill, after replacing the cap on the gas tank, and after returning the hose to its position on the gasoline pump, he walked behind the vehicle and began to proceed toward the front passenger seat occupied by his wife intending to get a check from her to pay for the gas he had just completed pumping into his car. Near the right rear of the vehicle, he slipped on a patch of ice located on the cement apron, fell, and sustained personal injuries. The ice on which he slipped apparently had formed in the drive-through area between the pump "island" and the service station building as the result of freezing water which had dripped from a canopy located above the pumps. The ice did not come from Marklund's vehicle. The condition of the car in no way contributed to cause the accident. At no time after completing the refueling operation did respondent come into any physical contact with his automobile.

Following the injury, respondent applied to his no-fault insurer, Farm Bureau Mutual Insurance Company (Farm Bureau) seeking economic loss benefits under Minn. Stat. § 65B.44 (1986). When that applica-

tion was denied, respondent commenced this declaratory judgment action.

The trial court granted Farm Bureau summary judgment based upon the undisputed facts. It ruled that economic loss benefits arising from accidents of this type were not recoverable under the Minnesota No-Fault Act. It concluded that the act of paying for vehicle maintenance (in this case, paying after completion of the refueling operation) is a distinct act separate and apart from the act of maintenance of the vehicle itself. A panel of the court of appeals disagreed and reversed, concluding " * * * the necessity of maintaining the car by refueling was a direct and substantial cause of Marklund's fall." 391 N.W.2d at 67.

Pursuant to Minn.Stat. § 65B.46, subd. 1 (1986), a person sustaining a personal injury arising out of the "maintenance" of a motor vehicle has the right to recover basic economic loss benefits from his or her own automobile insurer.[2]

Appellant Farm Bureau acknowledges that the decision of the court of appeals in *Brehm v. Illinois Farmers Insurance Co.*, 390 N.W.2d 475 (Minn.App.1986), precludes it from contending here that the act of refueling itself does not constitute "maintenance." However, appellant does assert that in this case the accident causing respondent's injuries occurred after completion of the refueling, and that, therefore, the injuries did not arise from the "maintenance" of a motor vehicle.

■ In adopting the Minnesota No-Fault Act, the legislature incorporated the identical definition of "maintenance" proposed by the Commissioners in the Uniform Motor Vehicle Accident Reparations Act, 14 U.L.A. 51 (1980).[3]

---

1. *Marklund v. Farm Bureau Mut. Ins. Co.*, 391 N.W.2d 65 (Minn.App.1986).

2. The Minnesota No-Fault Act states that: "If the accident causing injury occurs in this state, every person suffering loss from injury arising out of the maintenance or use of a motor vehicle has a right to basic economic loss benefits." Minn.Stat. § 65B.46, subd. 1 (1986).

3. That definition as codified in Minn. Stat. § 65B.43, subd. 3 (1986) reads:

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include (1) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or (2) conduct in the course of loading and unloading the vehicle

In both Minn.Stat. § 65B.43, subd. 3 and § 65B.46, subd. 1 (1986), the statutes couple the word "maintenance" with the word "use." Until today, this court has not been called upon to address the limitation of the scope of the word "maintenance." However, the phrase "maintenance or use" is not novel to automobile insurance law: for many years it has been a definitional component of the scope of coverage found in automobile liability policies. The existence of the phrase in those insurance policies has resulted in efforts by many courts, including ours, to try to ascertain the outer limits of the scope of the phrase as employed in policy language providing coverage. The advent of no-fault automobile reparation acts has resulted, generally for the first time, in the appearance of the phrase in statutory language delineating required coverage. While interpretation of the phrase "maintenance and use" as used in those automobile liability policies may furnish a guide to interpretation of the phrase as it appears in Minn.Stat. § 65B.43, subd. 3, and, at least in some instances, may afford interchangeable interpretational authority, *see, e.g.,* M. Steenson, *Minnesota No-Fault Automobile Insurance* 30 (1982), such interpretation is not always authority for establishing the definitional limits. A narrower construction under the statute may further advance the policy of the no-fault law.[4] Comments appended to the statutory definitional language in the Uniform Model Act by its commissioners indicate that while the definition of "use"

as employed in the statute is broader than mere operation of a motor vehicle, the scope of its definition should be limited "to activities whose costs should be allocated to motoring as part of an automobile insurance package." Commissioner's Comments, Unif. Motor Veh. Acc. Reparations Act § 1, 14 U.L.A. 55–56 (1980)[5]

While the statutory definition of "maintenance or use" appearing in the Model Act as well as in Minn.Stat. § 65B.43, subd. 3 (1986), or the examples used by the Uniform Act Commissioners in their Comments to the Model Acts, or court interpretation of the phrase as used in insurance policies may be helpful to a court in seeking to establish proper parameters of the phrase, in borderline cases the courts on an *ad hoc* basis must make the definition keeping always in mind the policy of the act. Commissioner's Comments, Unif. Motor Veh. Acc. Reparations Act § 1, 14 U.L.A. 56 (1986).

Although this court has not prescribed the parameters of the word "maintenance," we have addressed the definitional scope of the statutory word "use." Consistent with the statutory language defining that phrase as "maintenance or use of a motor vehicle *as a vehicle*" Minn.Stat. § 65B.43, subd. 3 (1986) (emphasis supplied), we have repeatedly held that a nexus must exist between the use of a motor vehicle as a motor vehicle and the injury. We have observed that this causal connection need not be synonomous with the concept of

unless the conduct occurs while occupying, entering into or alighting from it.

**4.** The Commissioners' Comments, Unif. Motor Veh. Acc. Reparations Act, § 1, 14 U.L.A. 56 (1980) not only recognized the indefiniteness of the statutory terms, but in noting the difference and formulating a more specific definition, suggested that the policy of the act might be frustrated by accepting court interpretations of the phrase as it appears in auto liability policies.

    The indefiniteness of the defined term has produced litigation in cases arising under automobile liability policies. In some cases, in part because of a tendency to construe an ambiguous term against the interests of the companies drafting the policy, and, in part to assure a solvent source of payment to a per-

son injured by an admitted wrongdoer, it is arguable that courts have included accidents too far removed from the general activity of motoring and that a narrower construction of the term would be more consistent with the policy of this Act. Other than specifying that injury arise out of maintenance or use "as a vehicle," it has not been possible to define the general concept more specifically, so borderline cases are left to the courts, as they have been under current automobile insurance policies.

**5.** Interestingly, in the same Comment, the commissioners specifically state that a person who slips and falls inside a travel trailer which is parked at a campsite is not covered by the No-Fault Act. *Id.*

proximate cause but have noted that it must be something more than that the vehicle was merely the situs of the happening of the accident and the resulting injury. *See, e.g., Nadeau v. Austin Mutual Insurance Co.*, 350 N.W.2d 368, 370 (Minn.1984); *North River Insurance Co. v. Dairyland Insurance*, 346 N.W.2d 109, 114 (Minn. 1984); *Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981). Moreover, in the context of analyzing the scope of the phrase as it was previously used in automobile liability insurance contracts, we stated:

> [T]he causal connection must be "reasonably apparent," and that "the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy."

*Associated Independent Dealers, Inc. v. Mutual Service Insurance Co.*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975) (quoting 12 Couch, Insurance 2d § 45:56).

■ In this case no connection existed between the injury and the use of this vehicle for transportation. The injury was not a natural and reasonable consequence of the use of the vehicle, nor was the vehicle an active accessory of the patron's injuries. In short, it seems clear that respondent's injuries had no nexus with the "maintenance" of his automobile. Unlike the plaintiff in *Brehm v. Illinois Farmers Insurance Co.*, 390 N.W.2d 475 (Minn.App. 1986), who was injured while washing the windows of his car, respondent Marklund had completed all maintenance functions he intended to perform on his car prior to the time that he fell. All that remained to be done by him was to pay for the gasoline that he had pumped. It is doubtful that any court would hold that an injury sustained by a policyholder when walking to his home mailbox to place a check in the mail to pay his gas bill would have any causal connection between the act of refueling the car and the injury. Yet, the two cases are identical in principle—they are slip and fall cases "whose costs should be allocated to general liability policies rather than motoring as part of an automobile insurance package." Commissioners' Comments, Unif. Motor Veh. Acc. Reparations Act § 1, 14 U.L.A. 56 (1980).[6]

Courts of other states having a statutory definition of "maintenance or use" substantially identical to that found in Minn.Stat. § 65B.43, subd. 3 (1986) have denied recovery by the insured from the automobile no-fault insurer in slip and fall cases because there existed an insufficient nexus between the injury and the "maintenance or use of the automobile," noting, generally, that the injury was causally connected with the condition of the premises, not with the vehicle itself. Illustrative of such analyses are a series of cases decided by the Michigan Court of Appeals. *See, e.g., Harkins v. State Farm Mutual Automobile Insurance Co.*, 149 Mich. App. 98, 385 N.W.2d 741 (1986) (no coverage for insured who, while attempting to close his garage door, slipped and fell); *Rajhel v. Automobile Club Insurance Association*, 145 Mich. App. 593, 378 N.W.2d 486 (1985) (no coverage for insured who slipped and fell on her way to meet a tow truck that she summoned after her car failed to start); *Griffin v. Lumbermens Mutual Casualty Co.*, 128 Mich. App. 624, 341 N.W.2d 163 (1983) (no coverage for insured who, after backing his truck up to a loading dock, got out and checked the truck's positioning, slipped and fell while returning to the truck's cab); *King v. Aetna Casualty and Surety Co.*, 118 Mich.App. 648, 325 N.W.2d 528 (1982) (no coverage for a plaintiff who slipped and fell on ice just before unlocking

---

6. In reversing the trial court, the majority of the court of appeals' panel cited and apparently relied upon *Barry v. Illinois Farmers Insurance Co.*, 386 N.W.2d 299 (Minn. App. 1986). Assuming, but not holding, that case properly decided (it was a split decision), it appears to be distinguishable. Ms. Barry, at the time of her slip, fall, and resulting injury, was in the process of entering the vehicle. Minn. Stat. § 65B.43, subd. 3 (1984). The court there noted this fact stating "Unfortunately, as she was about to re-enter her car and while she was very close to the door, she slipped on ice and was injured. Her use of the car was clearly an active accessory to the injury." 386 N.W.2d at 301.

the car door); *Block v. Citizens Insurance Co. of America,* 111 Mich. App. 106, 314 N.W.2d 536 (1981) (no coverage for plaintiff who slipped and fell while returning to her truck after making a delivery).

The respondent's injury was a result of a premises hazard completely unrelated to the use or repair or maintenance of his vehicle. The injuries he sustained could have happened anywhere that there existed a premise hazard. The presence of his automobile, at the very best, was only incidentally related to his injuries and certainly did not provide the necessary causal nexus.

Our holding today, we believe, comports with the predominant policy goals which prompted the legislature to enact Minn. Stat. ch. 65B (1986)—the No-Fault Act—to-wit, that costs of injuries causally resulting from motoring activities should be allocated to the automobile reparation insurance system. Premises hazards giving rise to slips, falls, and consequential injuries fall outside the parameters of hazards whose costs should be allocated to the activity of motoring.

Accordingly, we reverse and remand to the trial court for reinstatement of the judgment.