Pearl CHRISTENSEN, Respondent,

v.

GENERAL ACCIDENT INSURANCE, Appellant.

No. C8–91–1876.

Court of Appeals of Minnesota.

March 17, 1992.

Review Denied May 15, 1992.

Randall J. Fuller, Gary T. LaFleur, Babcock, Locher, Neilson & Mannella, Anoka, for respondent.

Arthur W. Priesz, Jr., Priesz & Jefferson, Wayzata, for appellant.

Considered and decided by HUSPENI, P.J., and RANDALL and SHORT, JJ.

## OPINION

HUSPENI, Judge.

Appellant challenges the trial court's determination that respondent was alighting from a vehicle when injured and is entitled to No–Fault insurance benefits. We reverse.

## FACTS

Respondent Pearl Christensen was injured after she slipped and fell on an icy street shortly after leaving her automobile. Respondent attempted to collect No–Fault insurance benefits from her insurance carrier appellant General Accident Insurance Company. Appellant refused to provide No–Fault benefits, and respondent brought this suit to compel payment.

The parties do not dispute the facts as found by the trial court. On the day of the accident, respondent's brother-in-law drove respondent to the house of a relative. He parked the car on the street, and respondent exited from the rear passenger side door. The streets were icy, and respondent placed her hand on the car to steady herself as she walked toward the front of the car. Respondent kept her hand on the car as she rounded the front of the car. As she approached the middle of the front of the car, respondent slipped and fell.

The trial court found that respondent was alighting from the car at the time of her fall, and awarded summary judgment to her on the issue of coverage under Minnesota's No–Fault Insurance Act. Minn.Stat. § 65B.46, subd. 1 (1988). The parties stipulated to entry of judgment for $20,000 in lieu of trial on any remaining fact issues, and this appeal followed.

## ISSUE

Is respondent entitled to No–Fault insurance benefits?

## ANALYSIS

The parties in this case dispute only the district court's conclusions about the scope of coverage and its application of the law. Accordingly, this court need not defer to the district court

and may determine whether the court "properly interpreted and applied the law to the facts presented."

*Huynh v. Illinois Farmers Ins. Co.*, 421 N.W.2d 390, 391 (Minn.App.1988) (quoting *Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.*, 304 Minn. 179, 183–84, 229 N.W.2d 516, 519 (1975)), *pet. for rev. denied* (Minn. May 18, 1988).

Minnesota's No–Fault Insurance Act provides:

> If the accident causing injury occurs in this state, every person suffering loss from injury arising out of *maintenance or use of a motor vehicle* * * * has a right to basic economic loss benefits.

Minn.Stat. § 65B.46, subd. 1 (1988) (emphasis added). The term "maintenance or use of a motor vehicle" is defined as

> maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and *alighting from* it.

Minn.Stat. § 65B.43, subd. 3 (1988) (emphasis added).

The trial court found that respondent was alighting from the vehicle at the time of her fall. In a memorandum incorporated into its order, the trial court reasoned, in part:

> There is really only one live issue presented under these facts. Was the plaintiff still in the process of "alighting" from her brother-in-law's automobile at the moment she fell? Or were her actions too attenuated from the vehicle in space and time to justify that characterization?
>
> \*     \*     \*     \*     \*     \*
>
> The legislature's decision to extend no-fault coverage to alighting accidents means that sometimes the costs of injuries caused by a misstep on icy terrain will be allocated to the activity of motoring. That allocation seems appropriate under the facts of this case.

██ The issue before us is whether respondent was "alighting from" the vehicle at the time she was injured. We agree with the trial court's observation that "sometimes the costs of injuries caused by a misstep on icy terrain will be allocated to the activity of motoring." We disagree only with the trial court's ultimate determination that appellant was, in fact, "alighting from" a vehicle when she was injured.

This court first addressed the meaning of the term "alighting from" in *State Farm Mut. Auto. Ins. Co. v. Levinson*, 438 N.W.2d 110, 114 (Minn.App.1989):

> [T]he. determination of whether a person is "alighting from" a vehicle is a question of degree to be determined based on all the evidence.

In *Levinson*, this court cited with approval the Florida Court of Appeals which held that:

> [A] rational limit to the activity that may be said to be encompassed within the term "alighting from" is the time and place at which the insured shows an intention, evidenced by an overt act based on that intention, to undertake a new direction or activity.

*Fidelity & Casualty Co. v. Garcia*, 368 So.2d 1313, 1315 (Fla.Dist.Ct.App.1979), *pet. for rev. denied*, 378 So.2d 344 (Fla. 1979), *cited in Levinson*, 438 N.W.2d at 114.

In *Levinson*, this court rejected the notion that "physical contact" is the operative test for coverage. *Id.* at 113. While rejection of this test would often result in a determination of coverage despite there being no physical contact with the vehicle, it is equally as possible that rejection of the "physical contact" test could result in a determination of no coverage despite there being physical contact with the vehicle. Therefore, the fact that respondent was in physical contact with the vehicle at the time of her fall is not dispositive. Rather, it is her intent which controls. *Id.* at 114.

Upon exiting the car, respondent clearly intended to leave the car and proceed toward her ultimate destination. It was only because the car was in the direction of her destination that she chose to use the car for support. Had her destination been across the street from the car, respondent would have walked away from the car immediately after exiting. We conclude that

at the time she fell, respondent had completed "alighting from" the car. Her intent upon exiting the car, and at the time of her fall, was to move toward her destination; toward the home of her relative. It was fortuitous that the physical presence of the vehicle served as an aid to her in reaching her destination. A fence, wall, or other stationary object would have served as efficiently.

This case is distinguishable from *Horace Mann Ins. Co. v. Neuville,* 465 N.W.2d 432, 435 (Minn.App.1991), *pet. for rev. denied* (Minn. Mar. 27, 1991). Neuville's disabled car was struck from behind by another motorist. *Id.* at 433. Prior to the accident, Neuville's car had broken down, and he had pushed it to an intersection where he waited outside the car for help. *Id.* This court affirmed the trial court's conclusion that Neuville was "alighting" from his vehicle when the injury occurred, and concluded:

> The relationship between appellant and his car in driving it, steering it when disabled, and staying close by until help came was a continuous and uninterrupted relationship.

*Id.* at 434.

In contrast to Neuville, respondent here clearly did not intend to remain with the car. It was during her new activity of proceeding to her destination that respondent was injured.

*Neuville* is also distinguishable because of the overriding policy concerns which supported this court's decision in that case. The injured party in *Neuville* had failed to insure his vehicle, and could collect No-Fault insurance benefits only if found to be neither alighting from nor occupying his vehicle at the time of his injury. *Id.* at 433. By finding that Neuville was, in fact, "alighting from" his uninsured vehicle at

the time he was injured, the court prevented payment of benefits from a second policy under which Neuville *was* an insured. *Id.* at 434. This court noted that "the Minnesota Supreme Court has exhibited considerable reluctance to allow any recovery by uninsured drivers or uninsured vehicles." *Id.*

To the extent that appellant attempts to rely on an analysis of the factors set forth in *Continental W. Ins. Co. v. Klug,* 415 N.W.2d 876 (Minn.1987), we believe that attempt is misplaced. In *Klug,* this court addressed only "[t]he legal issue of whether an accident [arose] out of the use or maintenance of an automobile," *id.* at 877, and not whether an injured party was "alighting from" a vehicle.[1]

■ The Minnesota Supreme Court has explained that No-Fault benefits are to be limited to "those risks the policy was intended to insure against, that is, against risks associated with 'motoring.'" *Classified Ins. Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985). At the time of her fall, respondent was not exposed to the risks associated with alighting from a vehicle. Rather, her fall was due to a premises hazard unrelated to the "risks associated with 'motoring.'" *Id.*

## DECISION

Because respondent was not "alighting from" her vehicle at the time of her fall, she is not entitled to No-Fault insurance benefits.

Reversed.

RANDALL, Judge, dissenting.

I respectfully dissent and would affirm the trial court's conclusion that respondent was alighting from a vehicle when injured and is entitled to no-fault insurance benefits.

---

1. Similarly, *Marklund v. Farm Bureau Mut. Ins. Co.,* 400 N.W.2d 337 (Minn.1987) and *Brehm v. Illinois Farmers Ins. Co.,* 390 N.W.2d 475 (Minn. App.1986) are not relevant to this case. We recognize that the factual circumstances of these cases bear a superficial similarity to the case at bar: *Marklund,* 400 N.W.2d at 338 (plaintiff injured after slipping on ice after filling his automobile's gas tank); *Brehm,* 390

N.W.2d at 476 (plaintiff injured after slipping on ice while washing his truck's windows at filling station). However, these cases dealt exclusively with the issue of whether the injury arose from the "maintenance or use of a motor vehicle and did not address the issue of whether the injured party was "alighting from" a vehicle. *Marklund,* 400 N.W.2d at 339; *Brehm,* 390 N.W.2d at 476.

Both parties frame the appeal in the context of two issues: 1) was respondent somewhere in the process of "alighting" from the vehicle when she slipped on ice, fell, and was injured; and 2) was the proper nexus present between her conduct and "the use and maintenance of a motor vehicle," enabling respondent to have coverage under a motor vehicle insurance policy.

I agree with the trial court and the majority that only one issue needs resolution, whether respondent was "somewhere in the process of alighting" from the automobile when she fell. The "use and maintenance of a motor vehicle" issue needs no analysis to resolve. Appellant admits the process of alighting from a car, by definition, is, logically enough, an integral part of use of a car. Minn.Stat. § 65B.43, subd. 3 (1988). Appellant agrees *if* respondent was in the process of alighting from a car when injured, there is coverage.

The pertinent facts are not in dispute. Appellant accepts the facts set out by the trial court in its Order and Memorandum:

On January 12, 1989, the plaintiff, seventy-seven year old Pearl Christensen, her sister, Virginia, and her brother-in-law, Paul, drove to the LaBelle Park condominium complex in Columbia Heights, Minnesota, to visit the plaintiff's nephew at his home there. On that date, the streets and sidewalks of Columbia Heights were slick with ice. The plaintiff exited the automobile from the rear passenger door on the driver's side. Keeping one hand on the body of the car to steady herself, she picked her way over the ice toward the front of the vehicle. The plaintiff rounded the front left bumper, still bracing herself on the car. Midway across the automobile's front end, she lost her footing on the ice and fell, sustaining fractures of her arm and hip. She was subsequently required to undergo a hip replacement.

We must interpret these facts to determine whether respondent was still in the process of alighting when injured or had she completed alighting and gone on to become a mere pedestrian walking down a slippery street. First of all, I disagree with the majority's conclusion that at the time of her fall respondent was not exposed to risks associated with alighting from a car, but rather, had her fall due to a premise's hazard unrelated to "risks associated with motoring." The majority cites *Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921 (Minn.1985). The facts in *Classified* are not similar and its holding is not pertinent to this case. In *Classified*, a woman committed suicide by running a car in a closed garage; car exhaust accidentally seeped into the attached house and killed two infants. The basic conclusion the supreme court drew from that fact situation to deny motor vehicle coverage was that the vehicle was not being used "for transportation purposes" at the time of the suicide. *Id.* at 923. Here, we do not have a "for transportation purposes" or "use or maintenance" issue. We have only the question of what is encompassed in "alighting from a car." Questions of transportation, use, and maintenance are resolved for or against respondent when the issue of alighting is resolved for or against respondent.

I find that respondent's fall, undisputedly due to icy conditions on the street where she parked, *is a direct risk associated with motoring in the State of Minnesota.* The interpretation or conclusion to be drawn from facts needs to have a basis in common sense. In Minnesota during the winter months, it is the rule rather than the exception that (unless parked indoors) you must watch your footing as you get out of a car. Always the possibility, and at times, a strong probability, exists that some accumulation of ice and snow will cause slipperiness in the area of your car.

At any given time, only a small fraction of cars out and about our streets in the winter have the option of parking only inside fully enclosed facilities. The hundreds of thousands of parking spaces on residential and commercial streets in any region in the state attest to the simple fact that, when you get out of a car in the winter in Minnesota, you have to watch where you place your feet because of the possibility of falling and injuring yourself.

That is exactly what happened here. Respondent watched carefully where she placed her feet and how she moved along the car, but still slipped and injured herself.

We note respondent's age of 77. Perhaps a younger, more athletic woman could have avoided the fall. That is immaterial to the analysis. Defendants "take their plaintiffs as they find them."

Unlike the majority, I find respondent at the time she left the car was directly exposed to a standard Minnesota winter risk associated with alighting from a vehicle. The only reason this coverage question is close is that it is honestly debatable whether the alighting risk respondent exposed herself to by getting out of a car on a winter street had concluded. If it had concluded, she was merely a pedestrian walking along a slippery public street who slipped and fell. That would preclude coverage. But if she had not finished the complete process of alighting, she is entitled to insurance coverage and the benefits.

The majority and I agree no single fact is dispositive in favor of coverage or against coverage. We both find *State Farm Mut. Auto. Ins. Co. v. Levinson,* 438 N.W.2d 110 (Minn.App.1989) and *Fidelity & Casualty Co. v. Garcia,* 368 So.2d 1313 (Fla.Dist.Ct. App.1979), *pet. for rev. denied* 378 So.2d 344 (Fla.1979), *cited in Levinson,* 438 N.W.2d at 114, helpful. The question of alighting is a question of degree to be determined from all the facts. Determining the limit of activity encompassed within the term "alighting from" is subjective and difficult in this case. The presence or absence of physical contact with the car, by itself, is not determinative. However, her physical contact with the car tends to support coverage rather than support a denial of coverage. I find her continued and uninterrupted physical contact with the car as she moved out of the back seat, through the car door, and then along the side of the vehicle supports the trial court's conclusion she was still in the process of alighting when she fell.

Looking at all of the facts, including that respondent arrived at the location of the injury by a car, exited from that car, and then, not feeling sure enough of her footing to start walking on her own, continued to use the car as support; I find the trial court properly concluded respondent had not completed the transition of a passenger alighting to a mere pedestrian walking the street.

Had the street been dry and respondent sure of her footing, had she slammed the car door shut and briskly taken a half dozen steps directly away from the car before falling, a strong argument for a completed alighting could be made, and thus no coverage. Had respondent fallen with one foot inside the car and one on the street, or with both feet on the street but both hands clinging to the door handle on an open door, a strong case for coverage is made. This case falls between the cracks. Had respondent worked her way around to the front of the car, and then turned and started walking toward the house, and then fell while negotiating the curb or walking down the street, it would push the limits of due process to mandate insurance coverage. But on the facts of this case, agreed upon by both parties, I agree with the trial court the process of alighting was ongoing when respondent fell. This passenger's alighting from that car was not completed.

The issue is close, and the facts give rise to different credible conclusions. But, it is not offensive to notions of fair play and logic that respondent prevail. I conclude the trial court properly found coverage for respondent.

I dissent and would have affirmed the trial court.