Alton W. BENIKE, Respondent,

v.

DAIRYLAND INSURANCE COMPANY, Appellant.

No. C5–94–330.

Court of Appeals of Minnesota.

Aug. 16, 1994.

Review Granted Oct. 14, 1994.

Sharon L. Van Dyck, Schwebel, Goetz, Sieben & Moskal, P.A., Minneapolis, for respondent.

James M. Lehman, Victor E. Lund, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, for appellant.

Considered and decided by KALITOWSKI, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Dairyland Insurance Company (Dairyland) contends the district court erred in concluding that respondent Alton W. Benike's injuries arose out of the use or maintenance of a motor vehicle.

## FACTS

On October 5, 1991, Scott Ohm lost control of his car while traveling on a county road and went into a ditch. The car struck and broke a utility pole, which came to rest on Ohm's car, leaving live power lines hanging down approximately five feet off the ground. Ohm crawled out of his car and assisted two passengers. Ohm then walked to the road and flagged down an approaching car driven by Benike. Ohm informed Benike of the accident and Benike agreed to go home and call for help.

After calling for help, Benike drove his car back to the accident scene. He parked his car on a gravel road adjoining the county road, approximately 50 to 90 feet from Ohm's vehicle. Benike told Ohm he called 911, then followed Ohm into the ditch toward Ohm's car, where he came in contact with the live power lines. Benike received a shock from the power lines and fell to the ground approximately three to five feet from Ohm's vehicle.

Benike commenced the present action against Dairyland for basic economic loss benefits under his automobile insurance policy. On cross-motions for summary judgment, the district court denied Dairyland's motion and granted Benike's motion. The district court concluded that Benike's injuries arose out of the use or maintenance of a motor vehicle. The parties stipulated to Benike's damages and the district court ordered the entry of final judgment.

## ISSUE

Did the district court err in concluding that Benike's injuries arose out of the use or maintenance of a motor vehicle?

## ANALYSIS

■ On appeal from summary judgment, we must determine: (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Whether an accident arises out of the use or maintenance of a motor vehicle is a legal question and each case must turn on the particular facts presented. *Hanson v. Grinnell Mut. Reinsurance,* 422 N.W.2d 288, 289 (Minn.App. 1988), *pet. for rev. denied* (Minn. June 29, 1988) (quoting *Continental Western Ins. v. Klug,* 415 N.W.2d 876, 877–78 (Minn.1987)).

A predominant goal of Minnesota's No–Fault Automobile Insurance Act is to allocate the costs of injuries causally resulting from motoring activities to the automobile insurance system. *Marklund v. Farm Bureau Mut. Ins.,* 400 N.W.2d 337, 341 (Minn.1987). The No–Fault Act provides for basic economic loss benefits for "all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1990). The phrase "maintenance or use of a motor vehicle" is defined as:

[M]aintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it.

Minn.Stat. § 65B.43, subd. 3 (1990).

■ The statute does not require that the injuries arise out of the injured party's maintenance or use of a motor vehicle. Instead, the injuries may arise out of another person's use or maintenance of a motor vehicle. *See, e.g., Nadeau v. Austin Mut. Ins.,* 350 N.W.2d 368, 372 (Minn.1984) (finding no-fault coverage where pedestrian was injured in attempting to avoid an oncoming car); *Holzemer v. Millers' Mut. Ins.,* 359 N.W.2d 291, 292 (Minn.App.1984) (finding pedestrian was entitled to no-fault coverage because he was struck by an automobile and thus his injuries arose out of the use of a motor vehicle).

Dairyland contends that coverage does not exist in light of *Haagenson v. National Farmers Union Property & Casualty,* 277 N.W.2d 648 (Minn.1979). We disagree. In *Haagenson,* the plaintiff received injuries from downed power lines after investigating the scene of an automobile accident. The supreme court concluded the plaintiff was entitled to no-fault coverage because the evidence supported a finding that he was "entering into" the automobile in which he had arrived. *Id.* at 651–52. As *Nadeau* and *Holzemer* illustrate, however, no-fault coverage is not limited to cases in which the injured party was occupying, entering into, or alighting from an automobile. Thus, although *Haagenson* is factually similar, we need not deny coverage merely because Benike was not "entering into" an automobile.

▇▇▇ The supreme court developed general factors to consider in determining whether an injury arose out of the use or maintenance of a motor vehicle. *Klug,* 415 N.W.2d at 878. First, we must consider the extent of causation between the automobile and the injury. *Id.* The automobile must be an "active accessory" in causing the injury. *Id.* (quoting *Holm v. Mutual Serv. Casualty Ins.,* 261 N.W.2d 598, 603 (Minn.1977)). This is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Tlougan v. Auto–Owners Ins.,* 310 N.W.2d 116, 117 (Minn.1981). In the tort context, "[p]roximate cause exists if the negligent conduct was a substantial factor in bringing about the injury." *Flom v. Flom,* 291 N.W.2d 914, 917 (Minn.1980). Because the record indicates that Ohm's conduct was a substantial factor in causing Benike's injuries, we conclude a sufficient causal connection exists between the automobile and Benike's injuries.

Second, we must consider whether an act of independent significance occurred, breaking the causal link between the "use" of the vehicle and the injuries inflicted. *Klug,* 415 N.W.2d at 878. There is no evidence that an intervening act occurred between Ohm's accident and Benike's injuries. Instead, the relationship between the accident and Benike's injuries was "continuous and uninterrupted."

*See Horace Mann Ins. Co. v. Neuville,* 465 N.W.2d 432, 434 (Minn.App.1991), *pet. for rev. denied* (Minn. Mar. 27, 1991).

Finally, we must consider whether the automobile was used for transportation purposes. *Klug,* 415 N.W.2d at 878. The record indicates that Ohm was using his automobile for transportation purposes until the time of the accident. Because Benike was injured shortly thereafter, we conclude this factor has been satisfied. In light of the predominant goal of no-fault insurance to allocate the costs of motoring injuries to the insurance system, we conclude Benike's injuries arose out of the maintenance or use of a motor vehicle.

**DECISION**

The district court correctly held that Benike's injuries arose out of the use or maintenance of a motor vehicle. Because the facts are undisputed, the district court correctly granted summary judgment in favor of Benike.

**Affirmed.**

AMUNDSON, Judge (concurring specially).

Although I agree with the majority's ultimate conclusion, I write to emphasize that the claim should more appropriately be made against the insurance of the Scott Ohm's vehicle, not Benike's insurance, as the district court suggested.

An injury that occurs while going to the aid of a motor vehicle accident victim, as Benike did in this case, is a cost of motoring. Such an injury should therefore be compensable under the philosophy of the no-fault law. *See Marklund v. Farm Bureau Mut. Ins.,* 400 N.W.2d 337, 341 (Minn.App.1987) (goal of no-fault system is to allocate the costs of injuries resulting from motoring activities).

"Danger invites rescue" is a well-settled doctrine which developed for the benefit of an injured rescuer. The original wrongdoer, whose negligent conduct threatened harm to another, may be liable to the rescuer who was injured as a result of an attempt to avoid the threatened harm. *Shafer v. Gaylord,* 287

Minn. 1, 4, 176 N.W.2d 745, 747 (1970). The doctrine recognizes that where an attempt is being made to save human life or property, a reasonably prudent person will take greater risks than might ordinarily be justified. *Henjum v. Bok*, 261 Minn. 74, 77, 110 N.W.2d 461, 463 (1961). More succinctly, "danger invites rescue" and the wrong that imperils the victim is a wrong to the rescuer. *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 711 (Mo.1990). What appellant asks us to hold is the reverse: rescue invites danger.

The rescue doctrine has corollary application here. The facts of this case are nearly identical to *Arnold v. Northern States Power Co.*, 209 Minn. 551, 297 N.W. 182 (1941). In *Arnold*, the driver of an automobile collided with a utility pole causing live power lines to hang near the ground. The plaintiff's decedent came upon the accident scene and observed that a passenger had been thrown from the car. While attempting to go under the power lines to reach the victim, the plaintiff's decedent came in contact with one of the wires and was electrocuted. The supreme court held that the trial court properly instructed the jury on the "eminent peril rule" which allowed the jury to find that the plaintiff's decedent was not contributorily negligent. *Id.* at 558–59, 297 N.W. at 186–87. Thus, the plaintiff's decedent could recover against the vehicle driver.

Although the determination of fault is not at issue in the present case, the rescue doctrine lends support for the proposition that a person who is injured while rescuing a motor vehicle accident victim should recover against the insurance of the vehicle that necessitated the rescue effort, i.e. Ohm's vehicle in the present case. There is sufficient causal connection between Ohm's vehicle and Benike's injury to apply the no-fault act. A contrary determination would leave a good samaritan without any recourse and would disfavor the commendable human instinct of rendering aid to those in need. *See id.* at 559, 297 N.W.2d at 186.

Additionally, there was no intervening act in this case to break the causal connection. The issue is not whether the use of Benike's car ended when he exited the vehicle to enter the ditch. Rather, the question is whether the use of Ohm's vehicle ended. An intervening act refers to later events; conditions existing and forces already in operation at the time of an actor's conduct are not included within that term. *Id.* at 561–62, 297 N.W. at 188. In this case, Benike's actions were part of one continuous course of conduct to aid the victim. Thus, there was no act of independent significance to break the causal link between the use of Ohm's automobile and Benike's injury. Thus, Benike's injuries arose out of the maintenance or use of a motor vehicle.

Accordingly, we should acknowledge the application of our time honored rule: danger invites rescue. To do otherwise would dishonor the doctrine and unnecessarily imperil anyone motivated by the angels of their better nature.