Johnnie TILLERY, Appellant,

v.

**LEAGUE GENERAL INSURANCE COMPANY, Respondent.**

No. C3–98–724.

Court of Appeals of Minnesota.

Oct. 13, 1998.

Review Denied Nov. 24, 1998.

Gary T. LaFleur, Steven J. Lodge, Babcock, Locher, Neilson & Mannella, Anoka, for appellant.

Karen Melling Van Vliet, Johnson & Van Vliet, L.L.P., St. Paul, for respondents.

Considered and decided by LANSING, P.J., and HARTEN and THOREEN, JJ.*

## OPINION

LANSING, Judge.

In this declaratory judgment action, an insured seeks to determine whether his no-fault policy covers transplant-related expenses incurred in donating part of an intestine to his son, who was injured in a motor vehicle accident. Although the son's injuries arose from the maintenance and use of a motor vehicle, the father's transplant-related expenses represent a separate injury that does not trigger the father's no-fault coverage. We affirm.

## FACTS

For purposes of the summary judgment motion, the facts have been stipulated. Johnnie Tillery and his son, David, were involved in a motor vehicle accident causing severe injuries to David that required an intestinal transplant. Tillery donated a portion of his intestine to David and incurred medical and hospital expenses in the amount of $26,217.20 and disability and wage loss expenses in the amount of $6,872.80. Tillery's no-fault insurer, respondent League General Insurance Company (League General), paid David's medical expenses up to the $20,000 per-person limits of Tillery's no-fault policy, but denied Tillery's independent claim for no-fault benefits.

Tillery brought this declaratory judgment action, and both parties moved for summary judgment. The district court granted League General's motion, concluding that Tillery was not entitled to a separate per-person recovery under his no-fault policy. Tillery appeals.

## ISSUE

Did the district court err by concluding that Tillery's transplant-related expenses are

not recoverable, independent of David's claim for no-fault benefits?

## ANALYSIS

Minnesota's No-fault Act provides for the payment of basic economic loss benefits to reimburse all injuries "arising out of" the maintenance or use of a motor vehicle. Minn.Stat. § 65B.44, subd. 1 (1996). Basic economic loss benefits provide a maximum of $40,000 for loss arising out of the injury to any one person, consisting of $20,000 for medical expense loss arising out of injury to any one person and $20,000 for income, funeral, and services losses arising out of the injury to any one person. *Id.*

Tillery claims that his medical expenses and wage losses arose out of the maintenance or use of a motor vehicle. When the facts are not disputed, the determination of whether injuries arose out of the maintenance or use of a motor vehicle is a legal conclusion, which we review de novo. *Continental W. Ins. Co. v. Klug,* 415 N.W.2d 876, 877 (Minn.1987); *Medicine Lake Bus Co. v. Smith,* 554 N.W.2d 623, 624 (Minn. App.1996).

To "arise out of" the use of a motor vehicle, an injury must meet three requirements. *See generally Klug,* 415 N.W.2d at 878. We address these requirements in the context of Tillery's individual claim for no-fault benefits that is separate from David's claim for no-fault coverage.

The first *Klug* requirement is that a motor vehicle be an "active accessory" in causing the injury. *Id.* This causation standard has been defined as

> something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury. It is enough if "the injury is a natural and reasonable incident or consequence of the use of the vehicle."

*Tlougan v. Auto–Owners Ins. Co.,* 310 N.W.2d 116, 117 (Minn.1981) (quoting *Haagenson v. National Farmers Union Property*

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

& Cas. Co., 277 N.W.2d 648, 652 (Minn. 1979)).

Tillery relies on Benike v. Dairyland Ins. Co., 520 N.W.2d 465 (Minn.App.1994), review granted (Minn. Oct. 14, 1994), appeal dismissed (Minn. Apr. 5, 1995). In Benike, an insured driver came upon a motor vehicle accident, got out of his own vehicle, and followed the accident victim towards the victim's vehicle, where he came into contact with live power lines. Id. at 466. The Benike court concluded that the injuries arose out of the maintenance or use of a motor vehicle because the accident victim's conduct was a substantial factor in causing the insured's injuries. Id. at 467.

Tillery argues that we should view his injuries in the same manner as the court viewed the insured's injuries in Benike because Tillery incurred his injuries while assisting a victim of a motor vehicle accident. But unlike the insured's injuries in Benike, Tillery did not incur his injuries during the course of assisting an injured motorist; his injuries were incurred at a later date, in the hospital, as a result of an intentional decision to undergo surgery. The motor vehicle that injured David was not an active accessory in causing Tillery's injuries because Tillery's claim for no-fault benefits was independent of David's claim for benefits and arose out of Tillery's own decision to undergo surgery.

The second Klug requirement is that there be no "act of independent significance * * *, breaking the causal link between 'use' of the vehicle and the injuries inflicted." Klug, 415 N.W.2d at 878. For example, an insured's act of leaving a motor vehicle and inflicting an intentional battery will break the causal link between use of a vehicle and subsequent injury. Lindsey v. Sturm, 436 N.W.2d 788, 790 (Minn.App.1989), review denied, (Minn. May 3, 1989). Similarly, Tillery's decision to donate a portion of his intestine to his son was an act of independent significance that broke the link between the motor vehicle accident that caused David's injuries and Tillery's own injuries.

The final Klug requirement is that the injury result from the use of a motor vehicle for transportation purposes. 415 N.W.2d at 878. The purpose of such a restriction is to limit the no-fault insurer's liability to risks associated with motoring. Classified Ins.

Corp. v. Vodinelich, 368 N.W.2d 921, 923 (Minn.1985).

It is undisputed that David's injuries resulted from the use of a motor vehicle for transportation purposes and that Tillery's donation of his intestine was for the purpose of alleviating David's injuries. If the costs had been submitted for coverage under David's per-person limits, a different analysis would be required. The cost to retrieve a donated intestine could parallel the costs incurred by a victim to procure an artificial implant, such as a pacemaker. But David had exhausted his per-person entitlement to medical expense benefits, and Tillery submitted his claim independent of David's per-person coverage. Under these circumstances, we conclude that Tillery's injuries resulted from his decision to undergo surgery, rather than from the use of a motor vehicle for transportation purposes. We recognize that this holding does not facilitate the commendable process of organ donation. But under the current structure of our insurance laws and the provisions of Tillery's policy, we cannot extend the coverage to cover Tillery's transplant-related expenses; legislative response would be necessary.

Tillery also argues that the district court erred by concluding that his injuries were not caused by an "accident." See Minn. Stat. § 65B.46, subd. 1 (1996) (requiring payment of basic economic loss benefits when insured suffers injury resulting from "accident"); Minn.Stat. § 65B.42(3) (1996) (stating that one purpose of no-fault insurance is to encourage prompt treatment of "accident" victim). We view the question of whether there has been an "accident" from the victim's perspective. McIntosh v. State Farm Mut. Auto. Ins. Co., 488 N.W.2d 476, 480 (Minn.1992). Our analysis of the causation issue compels a conclusion that Tillery's claim for basic economic loss benefits, independent of David's claim, flowed from a separate decision to donate a portion of his own intestine to David and consequently was not an "accident" as the definition applies to Tillery.

## DECISION

Tillery's transplant-related medical and disability expenses were not caused by an accident, did not arise out of the maintenance or use of a motor vehicle, and are not separately recoverable under his no-fault policy.

**Affirmed**.