[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action the plaintiff seeks to recover uninsured motorist benefits under an automobile liability insurance policy CT Page 5367 issued by the defendant. The plaintiff claims that he sustained injuries after he was assaulted by two unidentified occupants of an unidentified motor vehicle which followed the plaintiff to his home.
The testimony of the plaintiff and other evidence indicate that on August 31, 1994, the plaintiff was operating a 1987 Plymouth Horizon which was owned by his parents, with whom he resided. As he was driving to his home, the plaintiff noticed that a vehicle, which he did not recognize, was following him. After some attempt to allude the vehicle, the plaintiff pulled into the driveway of his home. The unidentified vehicle then pulled into the driveway behind the plaintiff's car, allegedly blocking his car from egress to the street. As the plaintiff began to get out of his car, two men rushed toward him and assaulted him, forcing the plaintiff back into his vehicle while punching and choking him. As a result of the attack, the plaintiff suffered personal injuries.
The parties have stipulated that the plaintiff's medical bills totaled $7,861.05 and lost wages totaled $3,920.00. The parties have also stipulated that the plaintiff is a covered person under the policy issued by the defendant, and that the amount of uninsured motorist coverage available under the policy is $100,000.00.
The "Uninsured and Underinsured Motorist Coverage Agreement" of the automobile liability insurance policy issued to the plaintiff's parents by the defendant provides: "We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured or underinsured motor vehicle because of bodily injury suffered by you or a relative. Damages must result from an accident arising out of the: 1. ownership; 2. maintenance; or 3. use; of the uninsured or underinsured motor vehicle." The defendant argues that since the plaintiff was not injured as a result of an accident arising out of the ownership, maintenance or use of an uninsured motor vehicle, the plaintiff is not entitled to uninsured motorist benefits under the policy. Conversely, the plaintiff argues that his injuries resulted from an accident arising out of the use of an uninsured motor vehicle.
General Statutes § 38a-336 (a)(1) provides, in pertinent part: "Each automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist CT Page 5368 coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. . . ." General Statutes § 38a-336 (a) (1). Section 38a-334-6 (a) of the Regulations of Connecticut State Agencies provides, in pertinent part: "The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. `Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent." Regs., Conn. State Agencies § 38a-334-6
(a).
"When an insurer seeks to limit its liability for uninsured or underinsured motorist coverage based on the [regulations] . . . it may do so only to the extent that the regulation expressly authorizes. . . . Similarly, where an insurer seeks to limit its liability based on the statute itself, rather than on the regulation, it should only be permitted to do so to the extent that the statute expressly authorizes."Chmielewski v. Aetna Casualty Surety Co.,218 Conn. 646, 674, 591 A.2d 101 (1991).
Neither the insurance policy issued by the defendant nor the statute or regulations define the term "accident" as used therein. "Settled principles . . . govern the interpretation of insurance policies. It is the function of the court to construe the provisions of the contract of insurance. . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the words in the policy are plain and unambiguous the established rules for the CT Page 5369 construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. . . .
"If, however, the insurance coverage is defined in terms that are ambiguous, such ambiguity is . . . resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (Citations omitted; internal quotation marks omitted.)Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 481-82, 697 A.2d 680
(1997).
"`Accident' is defined as `1. An unexpected and undesirable event. 2. Something that occurs unexpectedly or unintentionally . . . 3. Fortune or chance. . . .' American Heritage Dictionary 71 (2d college ed. 1985). From the viewpoint of the insured, an event is an accident if the insured did not expect, desire or intend it."Sherb v. Travelers Indemnity Co., Superior Court, judicial district of New London at New London, Docket No. 519498 (May 21, 1992) (Hurley, J.) (6 CONN. L. RPTR. 432).
The plaintiff cites Sherb v. Travelers Indemnity Co., supra,
and Roberts v. Utica Mutual Ins. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 374840 (March 22, 1996) (Freedman, J.) (16 CONN. L. RPTR. 381), for the proposition that whether an event is considered an "accident" must be interpreted from the point of view of the insured. In Sherb v.Travelers Indemnity Co., the plaintiff's decedent was killed when the vehicle in which he was riding collided with an uninsured motor vehicle driven by one Andre Johnson, who allegedly intentionally struck the plaintiff's decedent's car. See Sherb v. TravelersIndemnity Co., supra, 6 CONN. L. RPTR. 432-33. The court held that, as interpreted from the point of view of the insured, "a collision caused by the intentional act of the uninsured motorist is an `accident' within the meaning of Section [38a-334-6] of the regulations." Id., 434. "`While the injury may be intentionally inflicted by the aggressor, to the extent that the assault is unprovoked and/or unexpected from the injured person's standpoint the damages are just as accidental as if he had been negligently struck.'" Id., quoting A. Widiss, A Guide to Uninsured Motorist Coverage 95 (1970). Similarly, in Roberts v. Utica Mutual Ins.Co., supra, the plaintiff was forced off the road by an unidentified driver while he was driving his motorcycle. RobertsCT Page 5370v. Utica Mutual Ins. Co., 16 CONN. L. RPTR. 381. The court held that "[a]s viewed through the eyes of the plaintiff, he suffered an unexpected event that caused him several injuries. Accordingly, the plaintiff sufficiently alleges, as viewed through his eyes, that he suffered an accident." Id., 383.
The plaintiff in the present case argues that the fact that his unidentified assailants acted intentionally does not mean that the incident was not an "accident" under the policy because, as interpreted from his perspective, the injuries he sustained due to the unprovoked assault were unexpected. However, "[a] causal relation or connection must exist between an accident or injury and the ownership, maintenance or use of a vehicle for the accident or injury to come within the meaning of the phrase arising out of the ownership, maintenance or use of a vehicle." (Internal quotation marks omitted.) DuPaul v. Allstate Ins. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 284809 (October 9, 1992) (Hodgson, J.) (7 CONN. L. RPTR. 445, 446). In the two cases cited by the plaintiff, supra, there clearly existed such a causal connection because both cases involved motor vehicle crashes caused by an aggressor actually using another motor vehicle to inflict the injury. In Sherb v. Travelers Indemnity Co., the aggressor caused his vehicle to collide with the plaintiff's decedent's vehicle. In Roberts v. Utica Mutual Ins. Co., the aggressor used his vehicle to force the plaintiff's motorcycle off the road. The plaintiff argues, nevertheless, that such a causal connection exists under the present circumstances because the attack on the plaintiff "was the culmination of an ongoing assault in which the motor vehicle driven by the assailants played a major role," as the uninsured vehicle was used to block any escape by the plaintiff and was used to facilitate the assailants' own escape.
"[I]t is generally understood that for liability for an accident or an injury to be said to `arise out of' the `use' of an automobile for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury `was connected with,' `had its origins in,' `grew out of,' `flowed from,' or `was incident to' the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile." Hogle v. Hogle,167 Conn. 572, 577, 356 A.2d 172 (1975). "To `use' a motor vehicle means `to put [it] into action or service; [to] have recourse to or enjoyment of; employ.'" American Medical Response v. New HampshireIns., Superior Court, judicial district of New Haven at New Haven, CT Page 5371 Docket No. 373810 19 CONN. L. RPTR. 64 (March 10, 1997) (Silbert, J.), quoting Aetna Life Casualty Co. v. Bulaong, 218 Conn. 51,62, 588 A.2d 51 (1991), citing Webster's Third International Dictionary.
In the present case, it is too attenuated in both time and space to permit the court to conclude as a matter of law that it arose from the use of the uninsured automobile. The assault was too far removed from the use of the vehicle, as the vehicle was brought to a stop and parked, and its unidentified occupants had exited it to commit the assault. The mere fact that the assault "would not have happened without" the vehicle, as argued by the plaintiff, does not render the assault one that resulted from the use of the motor vehicle. The actions of the assailants were "disassociated from and independent of the vehicle's use." DuPaul v. Allstate Ins. Co.,supra, 7 CONN. L. RPTR. 446 (incident involving shooting of plaintiff's decedent by a man while plaintiff's decedent was sitting in parked car was not an "accident arising out of" the use of the motor vehicle by the plaintiff's decedent). Indeed, if the assailants had actually used the motor vehicle itself to commit the assault or to inflict the injury by, for example, striking the plaintiff or his vehicle with their vehicle, the injury would have arisen out of the use of the motor vehicle. See Roberts v. UticaMutual Ins. Co., supra, 16 CONN. L. RPTR. 381; Sherb v. TravelersIndemnity Co., supra, 6 CONN. L. RPTR. 432. Even if the assailants had not actually used the vehicle itself to inflict the injury but had used it in a manner such that it was a necessary element in the infliction of the injury, that may have been sufficient to demonstrate that the injury resulted from the use of the motor vehicle. See Continental Western Ins. Co. v. Klug, 415 N.W.2d 876,877-79 (Minn. 1986) (where assailant driving uninsured car pulled up next to victim's vehicle on highway and shot him, "injuries arose out of the use of an uninsured [motorist's] automobile"; case remanded for a determination of whether "accident" had occurred). But see Hughes v. National Car Rental, 22 Conn. App. 586, 590-91,577 A.2d 1132, cert. denied, 216 Conn. 817, 580 A.2d 63 (1990) (where assailant occupying rental car shot plaintiff while passing her car on highway, "operation" of rental car was nothing more than "means of access to the plaintiff's car and a means of escape"; therefore, operation of rental car was not proximate cause of plaintiff's injuries).
In Continental Western Ins. Co. v. Klug, supra, cited by the plaintiff, the Supreme Court of Minnesota held that an uninsured motorist who shot the victim while driving next to the victim's vehicle on the highway inflicted injuries which arose out of the use CT Page 5372 of the uninsured vehicle. Continental Western Ins. Co. v. Klug,supra, 415 N.W.2d 877-79. The court examined the circumstances of the case under a three-pronged analysis: (1) whether the vehicle was an "active accessory" in causing the injury; (2) whether any "act of independent significance" occurred breaking the causal link; and (3) what type of "use" of the vehicle was involved. Id., 878. Under the first prong, the court determined that the car was an "active accessory" to the assault because it was used to keep up with the victim. Id. Under the second prong, the court concluded that there was no act of independent significance to break the causal link because the assailant's "actions of driving and shooting were inextricably linked." Id. Notably, the court commented that "[h]ad [the assailant] used his vehicle to drive ahead of [the victim], left his vehicle, and shot [the victim] from the side of the road, we might have found an intervening act." Id. Finally, the court concluded that, under the third prong, the assailant "was using his car for motoring purposes" — that is, for "more than just a gun rest . . . he also used it to drive alongside [the victim] to assault him." Id.
Although the motor vehicle in the present case may have possibly been an "active accessory" in the injury, assuming that it was used, as alleged, to block the plaintiff's escape from his assailants, the act of the assailants exiting their vehicle to assault the plaintiff near his car was an act of independent significance which broke the causal link between the use of the vehicle and the injuries inflicted. See id. Therefore, ContinentalWestern Ins. Co. v. Klug is distinguishable.
Under the circumstances at issue, there does not exist a sufficient causal relation or connection between the injury and the use of the unidentified motor vehicle for the injury to come within the meaning of the phrase "arising out of the . . . use" of a motor vehicle.
Because the plaintiff was not injured as a result of an accident arising out of the use of an uninsured motor vehicle, the plaintiff is not entitled to uninsured motorist benefits under the insurance policy issued by the defendant. Therefore, judgment shall enter in favor of the defendants.
GROGINS, J.