## FELIX ESPINOSA *v.* ATLANTIC CASUALTY COMPANY

Superior Court        Judicial District of     File No. CV990589368S
Hartford

Memorandum filed June 7, 2000

*Neistat & Mason,* for the plaintiff.

*Law Offices of Larry R. Levine,* for the defendant.

## I

## INTRODUCTION

HON. RICHARD M. RITTENBAND, JUDGE TRIAL REFEREE. This is an unusual case in which a passenger in one car is claiming uninsured motorist benefits as a result of being shot by an operator or passenger in a second car.

## II

## FACTS

On July 20, 1998, at approximately 12:55 a.m., the plaintiff, Felix Espinosa, was a passenger in a 1995 Dodge automobile which was stopped near the southern side of Elliott Street in an eastern direction at or near that street's intersection with Wethersfield Avenue in Hartford. A second automobile, which was also being driven in an eastern direction on Elliott Street, came to a stop at or near the same intersection to the left of the automobile in which the plaintiff was a passenger. The operator or passenger of the second automobile fired gunshots generally to the north, but one shot accidentally went to the south, striking the plaintiff in the left side of his head. At the aforementioned time and place, the plaintiff was covered by an automobile insurance policy (policy) issued by the defendant, Atlantic Casualty Company, for both liability and uninsured motorist coverage. The driver of the second vehicle left the scene, and neither that vehicle nor its occupants

have been identified. For the purposes of the defendant's motion for summary judgment, the parties have agreed that the second vehicle was an uninsured motor vehicle.

It is well settled law that "[i]t is the function of the court to construe the provisions of the contract of insurance." (Internal quotation marks omitted.) *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 842, 669 A.2d 1221 (1996).

## III

## STANDARD OF REVIEW

"A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984); *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11, 459 A.2d 115 (1983).

A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. *Dougherty* v. *Graham*, 161 Conn. 248, 250, 287 A.2d 382 (1971). "To satisfy [this] burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 488, 280 A.2d 359 (1971). The test that has been stated is: "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Cummings & Lockwood*

v. *Gray*, 26 Conn. App. 293, 296–97, 600 A.2d 1040 (1991).

## IV

## ISSUES

### A

### Was the Shooting Accidental?

It is logical to conclude that if the shooter was firing at someone to the north and a bullet ended up going south, the bullet traveling south was accidental as to the plaintiff, even though the shooter committed an intentional tort by firing to the north.

### B

### Was the Gunshot Wound a Result of the Ownership, Maintenance or Use of a Motor Vehicle?

As to uninsured motorist coverage, the policy provides, in pertinent part, the following: "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of an uninsured motor vehicle."

Counsel for the defendant states that, to the best of his knowledge, no court has squarely addressed this issue before, however, he also cites *Edelman* v. *Pacific Employers Ins. Co.*, 53 Conn. App. 54, 56, 61, 728 A.2d 531, cert. denied, 249 Conn. 918, 733 A.2d 229 (1999). In *Edelman*, the court dealt with an intentional assault by Patrick R. Hibbits, the owner of The Inn at Falls Village. Hibbits had become intoxicated and assaulted his wife, who subsequently called the state police. During his difficult arrest, Hibbits assaulted and kicked the plaintiff, one of the state troopers, twice in the head in rapid succession and with great force. The insurance policy in question provided coverage for injuries

resulting from the "conduct of the business." The Appellate Court decided that there was no duty to defend for such a claim, as the assault on the plaintiff was not an ordinary, intended use of the premises and cited *Alderman* v. *Hanover Ins. Group*, 169 Conn. 603, 607, 363 A.2d 1102 (1975). "Our Supreme Court in *Alderman* employed a widely recognized definition of the word 'use' to determine that the plaintiff in that case had not used a certain piece of property for purposes of a policy's exclusions. The court found that an insured 'uses' property only where he puts it to his own service or to the purpose for which it was ordinarily intended." *Edelman* v. *Pacific Employers Ins. Co.*, supra, 61. The court in *Edelman* concluded that "Hibbits' assault of the plaintiff while he resisted arrest was not an ordinarily intended use of that part of the inn's premises leased to him." Id.

In the present case, this court concludes that driving an automobile for the purpose of a drive-by shooting is not a use for which the automobile was ordinarily intended.

The plaintiff claims in his original brief dated March 15, 2000, that "[t]he act of moving the uninsured motor vehicle into a position where it could be used to fire shots toward another vehicle one of which hit the plaintiff occurred in the use and operation of an uninsured motor vehicle." Apparently, he is arguing that driving the vehicle to the location was the ordinary use of the vehicle and the shooting was part of that act. There is no evidence, however, as to whether the operator/owner of the motor vehicle knew or did not know the shooting would take place. In his complaint, the plaintiff describes the shooting as being done by the operator or passenger. The vehicle was facing to the east and the shots were fired to the north, with the unknown

vehicle being north of the vehicle in which the plaintiff was a passenger. It is a mystery as to how firing north could have resulted in a bullet going south.[1] If the firing were to the north, however, the more logical perpetrator was the driver who was on the northern side of the vehicle. Of course, if the passenger were sitting behind the driver, he could just as easily have been the perpetrator. It is apparent from the facts before the court that the identity of the shooter is unknown.

The court rejects the plaintiff's argument because it is clear from the undisputed facts that it was not the vehicle that caused the accident. It was the firing of the gun that caused the accident. The driving of the vehicle and the firing of the gun were separate acts.

On April 24, 2000, the plaintiff amended his complaint and alleged that "[a]t said time and place, the unknown passenger of said other automobile was acting as the agent of the operator of said other automobile within the scope of his authority." The plaintiff in his brief then stated that the passenger was an agent of the owner/operator because the operator knew or should have known of his passenger's propensity to commit violent acts and knew or should have known that the passenger was in possession of a loaded gun, and that the operator was negligent by permitting the passenger to enter his motor vehicle. In addition, the operator knew or should have known that the passenger was about to commit violent acts and that he was negligent by permitting the passenger to enter his motor vehicle. As for agency, the brief states that the "operator was in control of the passenger and did consent to the acts

---

[1] According to the plaintiff's complaint, the shooter was most likely on the northern side of his vehicle in order to get a more effective shot at his target. For a bullet that allegedly was not aimed at the plaintiff's car to reach the plaintiff, it would somehow have to turn to the south, go through the shooter's car, emerge on the southern side and then travel through the northern side of the plaintiff's car.

of [the] passenger in that he knew or should have known that the passenger was going to commit a violent act while riding in [the] motor vehicle." No factual basis has been offered by the plaintiff to support the allegations that the operator knew or should have known that the passenger had violent tendencies and had a gun on his person. The plaintiff has also offered no evidence that the operator was in control of the passenger. To complicate this issue further is the fact that the plaintiff does not know who fired the shots. In his amended complaint, the plaintiff states: "At said time and place, the *operator or passenger* of said other automobile fired some gunshots . . . ." (Emphasis added.)

It is clear that the plaintiff does not know whether it was the operator or the passenger who fired the shots. The agency theory, therefore, is not supported by any facts offered by the plaintiff, who has a duty in a motion for summary judgment to offer an affidavit or other evidence to support his legal conclusions. In opposing a motion for summary judgment, the plaintiff must "provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact" and not merely rely on unsubstantiated allegations. *Thompson & Peck, Inc.* v. *Division Drywall, Inc.*, 241 Conn. 370, 374, 696 A.2d 326 (1997).[2]

Finally, as the defendant points out, this case rests on the interpretation of the policy. "The [i]nterpretation of an insurance policy, like the *interpretation of other written contracts*, involves a determination of the intent

---

[2] Even if it were proven that the passenger was the agent of the operator, and that either one was the shooter such that the operator was therefore responsible, that is all irrelevant based upon this court's interpretation that the policy was not intended to cover this situation, even if these facts are true. The court would also note that absent the operator and the passenger, who might invoke their fifth amendment rights even if they were found, there does not seem to be any way that the plaintiff can prove that his being shot was accidental.

of the parties as expressed by the language of the policy." (Emphasis added; internal quotation marks omitted.) *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, 247 Conn. 801, 805, 724 A.2d 1117 (1999). "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.*, 203 Conn. 123, 131, 523 A.2d 1266 (1987).

Under "PART B. UNINSURED AND UNDERINSURED MOTORIST COVERAGE" the language of the policy in the present case, in referring to the uninsured motor vehicle, states in pertinent part, the following: "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of an uninsured motor vehicle." The court finds that this language is clear and unambiguous. This court further finds this language means damages caused by the ownership, maintenance or use of the vehicle, and this language was never intended to have the insured covered for anything other than an automobile accident. This is an automobile liability policy with uninsured motorist coverage. The intent from the language itself is that the policy was to cover the insured for damages caused by an uninsured vehicle, not by someone in the vehicle shooting a gun.

Further, in the policy's definition of uninsured motor vehicle, paragraph two states "a land motor vehicle . . . which is a hit and run *vehicle* whose operator or owner cannot be identified *that* hits or causes an accident involving," and then goes on to describe covered parties, which certainly includes the plaintiff. (Emphasis added.) The operative word in paragraph two is that it must be the *vehicle* that hits or causes an accident . . . whose operator or owner cannot be identified." (Emphasis added.) It is the vehicle, not the

person, that hits or causes an accident. Here, the vehicle did not cause the accident. It was an individual, either the operator or the passenger, who caused the accident. Further, the vehicle is described as a hit and run vehicle, which would indicate a vehicle that crashes into or collides with the insured's vehicle. This court cannot believe that the legislature intended that uninsured motorist coverage was to cover a situation in which the insured was injured by a pistol shooting emanating from the uninsured vehicle. The court is unaware of any legislative history, and none has been provided by either party, that would indicate such an intent. As stated previously, the actions were separate. The driving of the vehicle to the scene and the firing of the gun were separate. The operator or owner of the vehicle would not be held liable under a liability policy if there were one, and absent the vehicle causing the accident, there is no coverage under the uninsured motorist provision. When asked by the court whether the plaintiff could collect on the other vehicle's liability policy if one existed, the plaintiff's attorney answered: "Probably not."

The court is well aware of the language directly under paragraph 2.c. of the policy which states: "If there is no physical contact with the vehicle causing the accident, the covered person must prove by a fair preponderance of the evidence that the injuries resulted from the negligence of an unidentified motorist." Again, it refers to the *vehicle* causing the accident. The court does not believe this sentence applies in the present case for the reasons stated previously in interpreting the other provisions of the policy. Once a determination is made that the policy requires that the vehicle cause the accident and that the firing of a gun from the vehicle is a separate and distinct act, the only logical conclusion is that there is no uninsured motorist coverage under the facts of the present case.

## V

## CONCLUSION

Accordingly, summary judgment is entered in favor of the defendant on its motion dated March 8, 2000.[3]

---

[3] There are no Appellate or Supreme Court decisions on this issue. There are, however, two Superior Court decisions that should be noted.

First, *Crisci* v. *Allstate Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. CV940367206S (January 14, 1999) (23 Conn. L. Rptr. 662) (*Silbert, J.*), in which three unknown assailants forced the plaintiff out of his vehicle and kicked and struck him. The court held that the assault "did not arise out of the operation, maintenance or use of an uninsured automobile" and granted the defendant's motion for summary judgment. Id., 664.

Second, *Walsh* v. *Nationwide Mutual Ins. Co.*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV950050665S (April 9, 1999) (22 Conn. L. Rptr. 10) (*Grogins, J.*), where the plaintiff was attacked by two unidentified persons, who chased him to his driveway in an admittedly uninsured motor vehicle, exited the vehicle and then assaulted him as he got out of his car. Although, as in the present case, the assailants used their uninsured vehicle to get to the scene of the crime, the court found that the assault did not arise out of the "use" of that vehicle and, after a trial, entered judgment for the defendant. Id., 13.

Similar findings were also made in *Lexie* v. *State Farm Mutual Auto Ins. Co.*, 251 Va. 390, 469 S.E.2d 61 (1996), and *Ruiz* v. *Farmers Ins. Co. of Arizona*, 177 Ariz. 101, 865 P.2d 762 (1993).