**CONTINENTAL WESTERN INSURANCE COMPANY,**
Respondent,

v.

**Russell KLUG, et al.,**
**Petitioners, Appellants.**

**No. C8–86–731.**

Supreme Court of Minnesota.

Dec. 4, 1987.

Theodore J. Smetab, Minneapolis, for petitioners, appellants.

Thomas F. Van Horn, St. Paul, for respondent.

## OPINION

AMDAHL, Chief Justice.

Appellants Russell and Wendy Klug petitioned this court to review a decision by the court of appeals affirming the trial court's granting of summary judgment in favor of respondent Continental Western Insurance Company (Continental). The court held that Russell Klug's gunshot injury did not arise out of the maintenance or use of a motor vehicle, and that therefore the appellants' claims were not covered under no-fault or uninsured motorist benefits. We granted the Klugs' petition for review and we reverse and remand to the court of appeals for further proceedings.

The parties have stipulated to the facts. On August 1, 1984, Russell Klug was driving home from work in the right-hand lane of a highway at 55 miles per hour. Klug looked to his left as a car pulled next to him in the passing lane 3 to 5 feet away. He recognized the driver as Daniel Bahe, a fellow worker. He also noticed that Bahe was pointing a shotgun out the passenger window directly at him.

Klug immediately swerved his car right and ducked down to avoid being shot. Only Klug's left arm, which he used to drive the car, remained exposed through the window. Klug heard a gunshot, and sat up to steer the car back into the right-hand lane; unknown to Klug at the time, he had been wounded in the left arm. Klug turned to look left and saw the shotgun was still pointed at him. Klug accelerated ahead of Bahe as a second shot was fired. Klug then pulled into the left lane in an attempt to prevent Bahe from approaching along the driver's side. Bahe sped up and rammed Klug's vehicle from behind. Klug swerved back and forth across the highway to prevent Bahe from pulling alongside.

The two cars maneuvered along the highway until they approached an exit. Klug noticed for the first time that he had been shot. He slammed on his brakes and pulled off the exit ramp. Bahe was unable to slow down quickly enough to exit with Klug. Klug stopped his car and received assistance.

The only injury claimed by Klug was the gunshot wound. The assailant Bahe was driving an uninsured car at the time of the incident. Both parties stipulated that Bahe's actions were the result of Bahe's mental illness.

Upon the facts stated, Continental sought summary judgment in its declaratory judgment action. The trial court granted judgment for Continental, stating, "[t]he injuries could have occurred anywhere; the automobile was merely the situs of the assault. There was no causal connection between use of the vehicle for transportation purposes and Klug's injuries. Accordingly, the insurer is not required to pay no-fault benefits under the policy."

The court of appeals affirmed, finding that Bahe's vehicle was the mere situs of his attack on Klug, and was not an "active accessory" of the incident. *Continental Western Ins. Co. v. Klug*, 394 N.W.2d 872, 877 (Minn.App.1986).

The legal issue of whether an accident arises out of the use or maintenance of an automobile is a recurring question which defies a simple test. Instead, "each case presenting such a question must, to a great degree, turn on the particular facts

presented." *Assoc. Indep. Dealers, Inc. v. Mutual Service Ins. Cos.*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975). We have set forth general factors to consider when addressing the issue.

■ The first consideration is the extent of causation between the automobile and the injury. In *Holm v. Mutual Service Cas. Ins. Co.*, 261 N.W.2d 598, 603 (Minn. 1977), we stated that the vehicle must be an "active accessory" in causing the injury. This causation standard was clarified to be "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Tlougan v. Auto–Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981) (girl burned while playing with matches in parked truck not victim of injuries caused by vehicle); *see also Engeldinger v. State Auto and Casualty Underwriters*, 306 Minn. 202, 236 N.W.2d 596 (1975) (man freezing to death in parked car after passing out from intoxication held not entitled to recover).

If a court finds the requisite degree of causation, it should next determine whether an act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted. In *Holm*, we found an act of independent significance where a police officer, after pursuing a motorcycle, left his vehicle to make an arrest and committed a battery upon the motorcyclist. We stated, "[the officer] had completely left the vehicle before he administered the tortious battery. The police car had served only to transport him to the scene of the incident. The battery could as easily have occurred had [the officer] come upon the stationary motorcycle while on foot." *Holm*, 261 N.W.2d at 603. *See also Wieneke v. Home Mutual Ins. Co.*, 397 N.W.2d 597 (Minn.App.1986) (act of independent significance where assailant and plaintiff drove alongside each other yelling insults, both cars stopped, and assailant got out of car, walked to plaintiff's car, and punched plaintiff), *petition for review denied* (Minn., January 21, 1987); *Edwards v. State Farm Mutual Auto. Ins. Co.*, 399 N.W.2d 95 (Minn.App. 1986) (intervening act where assailant drove victim to countryside, stopped car, then raped and killed her, leaving her body in the country), *petition for review denied* (Minn., March 13, 1987).

If a court finds the requisite degree of causation and no intervening independent act, it must consider one final inquiry. Though there may be a causal link between use of the car and the injury, the court must determine what type of "use" of the automobile was involved. In *Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921, 923 (Minn.1985), we explained that coverage should exist only for injuries resulting from use of an automobile for transportation purposes. Thus in *Vodinelich* we denied coverage where insured's children were accidentally asphyxiated when their mother used the vehicle to commit suicide in the garage of their home. *See also Waldbillig v. State Farm Mutual Auto. Ins. Co.*, 321 N.W.2d 49 (Minn.1982) (plaintiff injured by defective engine in back of parked pickup truck not covered because truck not being used as a vehicle).

Applying this to the facts of the present case, we initially conclude that the requisite degree of causation exists between Klug's injuries and Bahe's use of the car. It is apparent Bahe's car was an "active accessory" to the assault; Bahe used his car to keep up with Klug for over 2 miles in order to try and shoot Klug.

We also conclude that no act of independent significance occurred to break the causal link; Bahe's actions of driving and shooting were inextricably linked. Had Bahe used his vehicle to drive ahead of Klug, left his vehicle, and shot Klug from the side of the road, we might have found an intervening act. Under the circumstances of this case, however, we hold that the causal link between Klug's injuries and the use of the car was not broken.

Finally, we conclude that Bahe was using his car for motoring purposes. Bahe used his vehicle as more than just a gun rest— *see Nat'l Farmers Union Property and Cas. Co. v. Gibbons*, 338 F.Supp. 430 (D.N. D.1972)—he also used it to drive alongside Klug to assault him. Indeed, Bahe used his car not only to maneuver himself into a

position to harm Klug but also to maneuver Klug into a position from which Klug could be harmed.

■ We conclude that Klug's injuries arose out of the use of uninsured motorist Bahe's automobile. We do not address or decide the issue of whether an "accident" occurred within the terms of the policy, which covers injuries for "accidents" arising out of maintenance or use of a motor vehicle. Because of its decision, the court of appeals did not reach this issue. In view of our holding, we remand to the court of appeals for further proceedings.

The decision of the court of appeals is reversed and remanded to the court of appeals for further proceedings.

POPOVICH, J., took no part in the consideration or decision of this case.