Sheryl L. **DOUGHERTY**, Respondent,

v.

**STATE FARM MUTUAL INSURANCE COMPANY**, Appellant.

No. A03–1866.

Court of Appeals of Minnesota.

July 27, 2004.

Steven R. Schwegman, Mary B. Mahler, Quinlivan & Hughes, P.A., St. Cloud, MN, for appellant.

Timothy W. Nelson, Nelson Personal Injury Attorneys, St. Cloud, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge, HUDSON, Judge, and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Appealing the district court's final judgment in this insurance dispute, State Farm Mutual Automobile Insurance Company disputes the court's conclusion that respondent's voluntary intoxication was not an event of independent significance, that is, conduct that broke the causative tie between injuries she sustained and her use of a motor vehicle. Appellant also claims that injuries respondent sustained after leaving the vehicle, which was stuck in snow, did not arise out of the use or maintenance of the vehicle. Because we are required to apply no-fault law without consideration of fault, and because of inescapable characteristics of winter use of vehicles, we affirm.

## FACTS

While respondent Sheryl Dougherty was driving home in the early morning hours of December 17, 2000, after a night of drinking at a bar, her car became stuck in a snowdrift that had formed in the street. She got out of her car, locking her gloves and keys inside. Although the temperature that morning was extremely cold, respondent decided to walk to her townhouse, which was less than a block away.

Respondent attempted to walk up the parking lot entrance at her complex but discovered it was blocked by snow. Using her elbows and hands, she pulled herself through the snow. Respondent fell to the ground in the icy parking lot and could not regain her footing. She then crawled behind a garage where she lay down to rest and may have fallen asleep. By the time respondent crawled to her townhouse, 30–40 minutes had elapsed since the time she left her vehicle.

Blood tests taken at the hospital where respondent was taken showed that her blood alcohol concentration was .136. Her hands were frostbitten and several fingers were amputated.

Respondent submitted a claim for no-fault benefits under her State Farm Mutual Automobile insurance policy, but the insurer denied coverage for her injuries. In a trial after she sued for these benefits, the jury found that (1) respondent locked her vehicle on purpose; (2) after locking the vehicle her activities were solely directed at getting to a place of safety; (3) a snow bank or other significant weather-related condition impeded her ability to proceed directly to her townhouse; and (4) her activities while trying to travel from her vehicle to her townhouse were unreasonable.

In concluding that respondent is entitled to no-fault benefits for her injuries, the district court noted that the focus of no-fault analysis "is on the actual use of the vehicle, not on whether the people involved behaved properly," and that any of respondent's "negligent or unreasonable decisions" after her vehicle became stranded "are irrelevant." The court also determined that respondent's frostbite injuries were "a natural and reasonable consequence of the use of her vehicle" because it was reasonable for her to attempt to walk home in adverse weather conditions after her vehicle became stranded.

## ISSUES

1. Did the district court err by determining that the vehicle-use cause of respondent's injuries was not interrupted by an act of independent significance?

2. Did the district court err by determining that respondent's use of her vehicle extended to suffering injuries she incurred while walking and crawling from her vehicle to her townhouse?

## ANALYSIS

■ The determination of whether injuries arise out of "maintenance or use of a motor vehicle" as defined by Minnesota's

no-fault insurance statute is a legal issue, subject to de novo review. *See Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 877 (Minn.1987). Minnesota's no-fault insurance statute provides that "[i]f the accident causing injury occurs in this state, every person suffering loss from injury arising out of maintenance or use of a motor vehicle ... has a right to basic economic loss benefits." Minn.Stat. § 65B.46, subd. 1 (2000).

■ The statute defines the phrase "maintenance or use of a motor vehicle" as "maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it." Minn. Stat. § 65B.43, subd. 3 (2000). Whether a given accident arises out of the maintenance or use of a motor vehicle turns on the facts of each case. *Klug*, 415 N.W.2d at 877–78.

■ Courts must first consider "the extent of causation between the automobile and the injury." *Id.* at 878. If the plaintiff establishes causation, then the court must "determine whether an act of independent significance occurred, breaking the causal link between 'use' of the vehicle and the injuries inflicted." *Id.* If the court finds no intervening independent act, no-fault coverage applies unless the vehicle was not being used for transportation purposes. *Id.*

**1.**

■ The parties do not dispute that respondent was voluntarily intoxicated beyond the legal limit at the time she sus-

tained her frostbite injuries. Appellant argues that becoming intoxicated constituted an act of independent significance that broke the chain of causation between the use of her vehicle and her injuries.[1]

Consuming alcohol is a serious event because drinking exacerbates mental and physical impairments that lead to negligent conduct. *See O'Neal v. Burlington N., Inc.*, 413 N.W.2d 631, 634 (Minn.App. 1987) (stating that intoxicated person is required to exercise same degree of care as sober person). The severity of these impairments creates the need for laws that forbid driving after excessive drinking. *See* Minn.Stat. § 169A.20, subd. 1 (2002) (stating it is a crime for any person to drive with a blood-alcohol concentration of 0.1 or more). But it is not feasible to translate vital concerns about drinking and driving into the conclusion that voluntary intoxication breaks the causal link between insured motor vehicle use and a person's resulting injury.

Although the jury found that respondent acted unreasonably in traveling from her vehicle to her townhouse after the accident, application of the no-fault act requires cognizance of its express aim to "provide prompt payment" of benefits to victims of automobile accidents "without regard to whose fault caused the accident." Minn.Stat. § 65B.42(1) (2000). The statute dictates the district court's conclusion that treating respondent's actions in becoming intoxicated, contributing to her later negligence, as acts that break the tie between her injury and the use of her vehicle would impermissibly blame her for

---

1. State Farm's argument is not supported by citation to any legal authority. Generally, unsupported propositions may be considered waived. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971) (stating that assignment of error based on mere assertion and not supported by any authorities in appel-

lant's brief is waived and will not be considered on appeal absent prejudicial error). But because the argument of the parties is mutually directed at the issue and revolves around the interpretation of the no-fault statutes, and because the issue implicates interests of justice, we elect to review appellant's claim.

her injuries. *See North Star Mut. Ins. Co. v. Carlson*, 442 N.W.2d 848, 855 (Minn. App.1989) (concluding that negligently throwing flaming gasoline can to avoid injury is not act of independent significance, even when bystanders injured), *review denied* (Minn. Sept. 21, 1989).

We affirm the district court's application of statutory law. Moreover, we are constrained to reach this conclusion in part by examining the practical consequences of a contrary decision—the prospect of a body of litigation on a wide variety of claims of broken causation when insured persons have contributed to impairment of their reactions and are subsequently injured when using a motor vehicle. Among judicial challenges thus created would be the need to determine judicially the level of impairment or subsequent negligence that would require denial of no-fault benefits. The danger of establishing an undesirable precedent in no-fault insurance law is a significant consideration in our decision to follow Minn.Stat. § 65B.42(1) and established precedent on driver fault. *See Luthen v. Luthen*, 596 N.W.2d 278, 282 (Minn.App.1999) (considering dangers of establishing precedent); *Petition of Minn. Power & Light Co.*, 435 N.W.2d 550, 557 (Minn.App.1989) (same), *review denied* (Minn. Apr. 19, 1989).

**2.**

 Appellant also argues that respondent's injuries "are unrelated to the maintenance and use of her vehicle." To satisfy the causation prong of the *Klug* test, respondent's car must have been an "active accessory" in causing her injuries. *Tlougan v. Auto–Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981). This causation standard is less than proximate cause in the tort sense and requires more than the vehicle being the mere situs of the injury. *Id.* A plaintiff establishes a causal connection by showing "the injury is a natural and reasonable incident or consequence" of the vehicle's use. *North River Ins. Co. v. Dairyland Ins. Co.*, 346 N.W.2d 109, 114 (Minn.1984) (citation omitted).

Appellant cites *Christensen v. General Accident Ins.*, 482 N.W.2d 510 (Minn.App. 1992), *review denied* (Minn. May 15, 1992), to support its proposition that respondent's injuries do not arise out of the use of her vehicle. Christensen, who was injured after falling on an icy street shortly after exiting her vehicle, was not entitled to no-fault benefits because at the time she fell she had completed "alighting from" her car. *Id.* at 512–13. Applying *Christensen*, appellant argues that respondent's injuries are unrelated to the use of her vehicle because they occurred after she alighted from her vehicle and they were caused by premises hazards, such as snow and ice.

But *Christensen* is distinguishable from this case, where respondent's vehicle never reached her intended destination. The district court found, and it is undisputed on appeal, that respondent's vehicle became "stuck" in a snowdrift while en route to her townhouse. Because respondent never completed using her vehicle due to her vehicle-related accident, *Christensen* is not authority for appellant's assertion that respondent's injuries did not arise out of the use of her vehicle.

Appellant also contends that *Marklund v. Farm Bureau Mut. Ins. Co.*, 400 N.W.2d 337 (Minn.1987), supports the proposition that respondent's injuries do not arise out of the use of her vehicle. Marklund finished refueling his car at a gas pump and slipped on a patch of ice while he was walking toward the front passenger side of his car. *Id.* at 338. The supreme court denied benefits Marklund claimed for injuries from the fall, concluding that the injuries did not arise out of the use or maintenance of his vehicle because he had "completed all maintenance

functions he intended to perform on his car prior to the time that he fell." *Id.* at 340. The court attributed Marklund's injuries to premises hazards completely unrelated to the maintenance of his vehicle. *Id.* at 341.

Similarly, appellant asserts that respondent's injuries did not arise out of the use of her vehicle but were caused by premises hazards. By transposing the *Marklund* holding, which asked whether injuries arose out of maintenance, we can consider the case as authority suggesting that use of a vehicle is completed when a driver's intended use of a vehicle is completed. But *Marklund,* like *Christensen,* deals with facts that differ from those in this case; respondent's intended use of her vehicle was not completed before she sustained injuries due to her vehicle-related accident.

Similarly, appellant's reliance on *Engeldinger v. State Auto. & Cas. Underwriters,* 306 Minn. 202, 236 N.W.2d 596 (1975), is misplaced. In *Engeldinger,* the widow of an intoxicated and unconscious man who froze to death while spending the night in a vehicle, was denied insurance benefits because the vehicle was the mere situs of the deceased's injuries. *Id.* at 208, 236 N.W.2d at 600. But *Engeldinger* addresses injuries that did not arise out of a problem encountered with operation of a motor vehicle, unlike these circumstances, where respondent's vehicle became stuck in the snow.

We appreciate that weather emergencies are an anticipated part of the driving experience and that this is particularly true of winter elements when driving in Minnesota. Residents make preparations for winter driving, in selecting and equipping vehicles and in protective belongings carried in them. The state spends time and money plowing, sanding, and salting roads in winter to improve driver safety. *See Hennes v. Patterson,* 443 N.W.2d 198, 200–01 (Minn.App.1989) (listing some procedures MNDOT uses to remove snow in Twin Cities), *review denied* (Minn. Sept. 15, 1989). Roads are designed to alleviate drifting snow in the winter. *See Interstate Power Co., Inc. v. Nobles County Bd. of Comm'rs,* 617 N.W.2d 566, 571 (Minn.2000) (noting that highway department planned improvements to highway and county road to eliminate drifting snow in winter). And the laws of Minnesota immunize the state and its municipalities from most claims arising from snow or ice conditions on highways. *See, e.g.,* Minn.Stat. § 3.736, subd. 3(d) (2002).

Because the hazards of winter are a fundamental part of the driving experience, it is a foreseeable condition of vehicle use that vehicles may become disabled on the road due to snow or ice, and drivers may be exposed to injury in attempting, sometimes unreasonably, to provide for their safety. We conclude that respondent's frostbite injuries, which were sustained after her vehicle became stuck in the snow, are a natural consequence of the use of her motor vehicle. *See Baker v. Am. Family Mut. Ins. Co.,* 460 N.W.2d 86, 87 (Minn.App.1990) (noting parties stipulated that Baker's death, which was caused by exposure to subzero temperatures and hypothermia after walking away from her vehicle when it became stuck in a ditch, arose out of maintenance or use of her vehicle), *review denied* (Minn. Nov. 9, 1990).

■ Finally, appellant argues that respondent was not using her vehicle for transportation purposes at the time of her injury. Because the jury found that respondent purposely locked her vehicle when she left it after the accident, appellant asserts that respondent intended to abandon the vehicle and, consequently, that she was no longer using the vehicle for transportation purposes.

This argument misinterprets the third prong of the *Klug* test. Respondent is not required to show that she was using her vehicle for transportation purposes at the moment she was injured, but is required more generally to show that her injuries resulted from the operation of a motor vehicle that was being so used. *See Klug,* 415 N.W.2d at 878 (stating no-fault "coverage should exist only for injuries resulting from use of an automobile for transportation purposes"). Her intent to "abandon" her vehicle after the accident, as a result, is irrelevant. Respondent was using her vehicle for transportation purposes at the time she became stuck in the snow.

## DECISION

The district court did not err by concluding that respondent is entitled to no-fault insurance benefits because her injuries arose out of the use of her motor vehicle.

**Affirmed.**

WILLIS, Judge (Concurring specially).

I concur in the result reached by the majority because I believe that it reflects the current state of no-fault law in Minnesota, and we are an error-correcting court only. I write separately to point out that, in my judgment, this case is a good example of how much the concepts of "accident" and "injury arising out of the use of a motor vehicle" have been expanded beyond what I think the legislature had in mind when it adopted the no-fault act in 1974.

Respondent Dougherty's frostbite injuries resulted from the following: Dougherty spent the evening of December 16, 2000, drinking at two bars. She left the second bar at approximately 1:15 a.m. on December 17, and, although she was intoxicated, she began to drive the 10 blocks from the bar to her apartment complex. When she was a little more than 300 feet from the door to her apartment, she ran her car into a snowdrift and got stuck. She left her car and began walking toward her apartment, and, unable to stand on the icy parking lot of her apartment complex, she crawled across the parking lot and wound up behind a garage, where she lay down and may have "dozed off," or passed out, for a time. Approximately 30 minutes after she left her car, she reached the door to her apartment, where she awakened her daughter.

As the majority opinion obliquely suggests, if Dougherty had perhaps been a little less intoxicated and had made it into the parking lot of her apartment complex and parked her car, and then had fallen, crawled, passed out, and suffered frostbite, precedent would dictate that her injuries then would not arise out of the "use of a motor vehicle." But the fact that Dougherty did not reach her destination before abandoning her car produces a different result.

I find it difficult to believe that the legislature contemplated the mandatory payment of benefits on facts such as these when it passed the no-fault act 30 years ago to provide benefits "to victims of automobile accidents without regard to whose fault caused the accident." Minn.Stat. § 65B.42(1) (2002).