Sheryl L. DOUGHERTY, Respondent,

v.

STATE FARM MUTUAL INSURANCE
COMPANY, Appellant.

No. A03–1866.

Supreme Court of Minnesota.

July 14, 2005.

Steven R. Schwegman, Mary B. Mahler, Quinlivan & Hughes, P.A., St. Cloud, MN, for Appellant.

Timothy W. Nelson, Nathan W. Nelson, Nelson Personal Injury Attorneys, St. Cloud, MN, for Respondent.

Michael A. Bryant, Bradshaw & Bryant, P.L.L.C., Waite Park, MN, for Amicus Curiae Minnesota Trial Lawyers Association.

## OPINION

PAGE, Justice.

This case requires us to review a court of appeals decision affirming a Stearns County district court judgment in which the district court concluded that injuries sustained by respondent Sheryl Dougherty, an insured of appellant State Farm Mutual Insurance Company (State Farm), arose out of the maintenance or use of a motor vehicle and that Dougherty was therefore entitled to no-fault insurance benefits. Because we conclude that Dougherty's injuries were a natural consequence of her use of a vehicle, we affirm.

Dougherty's injuries occurred on December 17, 2000, when she left a bar after a night of drinking and attempted to drive approximately 10 blocks to her apartment. Although the actual air temperature at the time is not in the record, the temperature, including wind chill, was minus 45 degrees Fahrenheit. Before reaching her destination, Dougherty's car became stuck in a snowdrift. When she could not get the car out of the snowdrift, she exited the car, locked its doors—with her keys, hat, and gloves still inside—and attempted to walk the remaining distance, approximately 330 feet, to her apartment. In the process, she had to use her hands and arms to push herself through a snowbank created by a snowplow. Once on the other side of the snowbank, she slipped and fell on the ice in the parking lot adjacent to her apartment building and was unable to regain her footing.

Dougherty, who crawled on the ice for some period of time, eventually took refuge out of the wind near the side of a garage and might have fallen asleep. At some point, she proceeded to crawl the rest of the way to her door, arriving there 30 to 40 minutes after she left her car. As a result of being exposed to the elements without protection, Dougherty sustained severe frostbite, which led to the amputation of a number of her fingers.

Dougherty sought benefits from her no-fault insurance carrier, State Farm. State Farm denied coverage, contending that her injuries did not arise "out of the main-

tenance or use of a motor vehicle" as required under the Minnesota No–Fault Automobile Insurance Act (No–Fault Act). Minn.Stat. § 65B.46, subd. 1 (2004). On September 17, 2001, Dougherty commenced the instant lawsuit against State Farm to obtain payment of no-fault benefits. After discovery, the parties brought cross-motions for summary judgment, which the district court denied. After a jury trial, the jury responded to four special interrogatories as follows:

1. Was there a snowbank, or other significant weather-related condition which impeded Sheryl Dougherty's ability to proceed directly to her apartment? Yes.

2. Once Plaintiff knew she couldn't get back into her car, were Plaintiff's activities solely directed at getting to a place of safety? Yes.

3. Were such activities reasonably carried out? No.

4. Did Sheryl Dougherty lock her car on purpose? Yes.

The district court then entered judgment in favor of Dougherty, concluding that her injuries arose out of the use and operation of her motor vehicle because they were a natural consequence of her use of the vehicle and no independent act broke the chain of causation. The court of appeals affirmed, concluding that because Dougherty's frostbite injuries were sustained after her vehicle became stuck in the snow, they were a natural consequence of her use of the vehicle. *Dougherty v. State Farm Mut. Ins. Co.*, 683 N.W.2d 855, 860 (Minn.App.2004).

█ The No–Fault Act provides "economic loss benefits" for injuries "arising out of maintenance or use of a motor vehicle." Minn.Stat. § 65B.46, subd. 1. The phrase "maintenance or use of a motor vehicle" is further defined by statute as "maintenance or use of a motor vehicle as a vehicle, including, incident to its mainte-

nance or use as a vehicle, occupying, entering into, and alighting from it." Minn.Stat. § 65B.43, subd. 3 (2004). Whether an injury arises out of the maintenance or use of a motor vehicle is a question of law, which we review de novo. *N. River Ins. Co. v. Dairyland Ins. Co.*, 346 N.W.2d 109, 113 n. 2 (Minn.1984).

In *Continental Western Insurance Co. v. Klug*, we stated that whether "an accident arises out of the use or maintenance of an automobile is a recurring question which defies a simple test." 415 N.W.2d 876, 877 (Minn.1987). Recognizing that "each case presenting such a question must, to a great degree, turn on the particular facts presented," we identified three factors for consideration when determining whether an accident arose out of the maintenance or use of a motor vehicle:

1. the extent of causation between the automobile and the injury;

2. whether an act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted; and

3. whether the automobile was being used for transportation purposes.

*Id.* at 877–78.

█ A causal connection between the injury and the maintenance or use of a motor vehicle is established if "the injury is a natural and reasonable incident or consequence" of the vehicle's use. *N. River Ins. Co.*, 346 N.W.2d at 114 (quoting *Tlougan v. Auto–Owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981)). That is to say, the vehicle must have been an "active accessory" in causing the injury. *Klug*, 415 N.W.2d at 878. This causation standard requires "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Id.* (quoting *Tlougan*, 310 N.W.2d at 117).

■ The phrase "arising out of" is broadly construed. *Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.*, 304 Minn. 179, 183, 229 N.W.2d 516, 519 (1975) ("[T]he term 'arising out of the use' of the insured vehicle is broad in scope * * *."); 8D John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 5171.55, at 48 (Supp.2001). "Arising out of" generally means "originating from," "growing out of," or "flowing from." *Associated Indep. Dealers*, 304 Minn. at 182, 229 N.W.2d at 518; 8 Lee R. Russ & Thomas T. Segalla, *Couch on Insurance* § 119.33, at 119–50 (3d ed.1997).

■ State Farm contends that the evidence presented at trial establishes that Dougherty's encounter with one or more premises hazards, as opposed to the maintenance or use of her vehicle, caused her injuries. Specifically, State Farm argues that the snowbank and icy parking lot caused Dougherty to be exposed to the elements for an extended period of time, not the maintenance or use of her vehicle. In support of this argument, State Farm relies on our decision in *Marklund v. Farm Bureau Mutual Insurance Co.*, 400 N.W.2d 337 (Minn.1987), and the court of appeals' decision in *Christensen v. General Accident Insurance*, 482 N.W.2d 510 (Minn.App.), *rev. denied* (Minn. May 15, 1992).

In *Marklund*, the plaintiff sustained injuries at a self-service gas station when he slipped and fell on ice after he had completed filling his vehicle with gas and was walking around the vehicle to get a check from his wife so he could pay for the gas. 400 N.W.2d at 338. In considering the existence of a causal connection between the injury and the use of the vehicle for transportation, we concluded that the "injury was not a natural and reasonable consequence of the use of the vehicle, nor was the vehicle an active accessory of the patron's injuries." *Id.* at 340. Instead, we said that Marklund's injury "was a result of a premises hazard completely unrelated to the use or repair or maintenance of his vehicle" and the "presence of his automobile, at the very best, was only incidentally related to his injuries and certainly did not provide the necessary causal nexus." *Id.* at 341. We based this conclusion on the fact that Marklund had finished pumping gas at the time he slipped and fell on the ice. *Id.* at 340. Thus, we held that Marklund's injuries did not arise out of the "maintenance" of a motor vehicle and noted that "[p]remises hazards giving rise to slips, falls, and consequential injuries fall outside the parameters of hazards whose costs should be allocated to the activity of motoring." *Id.* at 341.

In *Christensen*, the issue was whether Christensen was "alighting from" her vehicle at the time of her fall. 482 N.W.2d at 512. Christensen exited the passenger side of the vehicle she was riding in and placed her hand on the vehicle to steady herself as she walked to the front of the vehicle on an icy street. *Id.* at 511. In the process, she fell, sustaining injuries. *Id.* The court of appeals concluded that an injured party completes "alighting from" a vehicle when she intends to undertake a new activity and evidences that intention by an overt act and held that Christensen was not "alighting from" her vehicle at the time she slipped and fell. *Id.* at 512–13.

The court of appeals in this case distinguished *Marklund* and *Christensen* on the basis that, in both of those cases, the intended use of the vehicle had been completed before the injuries occurred, but in this case Dougherty's intended use of the vehicle had not been completed when the vehicle became stuck in the snowdrift. *Dougherty*, 683 N.W.2d at 860. Specifically, the court of appeals stated:

Because the hazards of winter are a fundamental part of the driving experience, it is a foreseeable condition of vehicle use that vehicles may become disabled on the road due to snow or ice, and drivers may be exposed to injury in attempting, sometimes unreasonably, to provide for their safety. * * * [R]espondent's frostbite injuries, which were sustained after her vehicle became stuck in the snow, are a natural consequence of the use of her motor vehicle.

*Id.; see also Clapp v. Physicians Health Plan of Minn.,* No. C0–91–2374, 1992 WL 95890, at *3 (Minn.App. May 12, 1992) (unpublished) (holding that when a paraplegic driver fell while entering his specially equipped vehicle, was unable to pull himself into the vehicle or his wheelchair, and sustained frostbite injuries during the time it took him to drag himself from the vehicle to the house, the injuries ·"arose out of" the maintenance or use of a motor vehicle).

Dougherty argues that the "act of getting stuck in a snow bank, combined with the preexisting weather conditions, gave rise to a dangerous situation" and that she "did not encounter the dangerous cold, snow, and ice in a situation wholly dissociated from and unrelated to her use of her vehicle." Thus, Dougherty argues that, "[u]nlike the unrelated slip-and-fall in *Marklund,* the act of getting stuck in the snow and becoming stranded is undoubtedly one of the 'risks associated with motoring,' especially in the state of Minnesota." In essence, Dougherty argues that because her use of the vehicle placed her in a hazardous situation, her injuries arose out of the maintenance or use of the motor vehicle.

With these arguments, we are faced with the question of whether Dougherty's encounter with the snowbank and icy parking lot and her consequent injuries are a "natural and reasonable incident or consequence"· of her use of her motor vehicle. Despite State Farm's focus on the existence of premises hazards, an injury caused in part by premises hazards is not always unrelated to the risks of motoring. For example, in *Nadeau v. Austin Mutual Insurance Co.,* we held that when the plaintiff was injured when she slipped on ice in her driveway while avoiding a vehicle driving toward her the injuries "arose out of" the maintenance or use of a motor vehicle. 350 N.W.2d 368, 371 (Minn.1984). We noted that there was "no merit" to the claim that the plaintiff's injury was caused solely by the slippery conditions of her driveway because, although she sustained the injury by slipping and falling, "she did so while retreating from the street to avoid [the] oncoming vehicle." *Id.* at 371. In examining the results in *Marklund, Christensen,* and *Nadeau,* it is apparent that the determinative issue is not whether a "premises hazard" was involved, but the degree of causation between the use of the vehicle and the injury. *See also Klug,* 415 N.W.2d at 877–78 (finding a sufficient causal connection between the insured's injuries and the use of the vehicle, although a shotgun blast was the direct instrument of harm).

When a vehicle is stranded due to weather conditions or other emergency, it is a "natural and reasonable incident or consequence" of the use of the vehicle that the driver leaves the vehicle to seek· help or safety. *Viking Ins. Co. of Wis. v. Coleman,* 927 P.2d 661, 665 (Utah Ct.App.1996) (holding that there was a causal nexus between the maintenance or use of the vehicle and the accident in a case in which the driver, returning to his stalled vehicle, tripped and fell into oncoming traffic while crossing a median on foot and caused a passing truck to hit the median and rollover); *Falls v. N.C. Farm Bureau Mut.*

*Ins. Co.,* 114 N.C.App. 203, 441 S.E.2d 583, 585 (1994) (concluding that a person walking on the shoulder of a road in search of mechanical assistance after the vehicle he was driving broke down was "using" the vehicle when struck by another vehicle); *Aryainejad v. Econ. Fire & Cas. Co.,* 278 Ill.App.3d 1049, 215 Ill.Dec. 593, 663 N.E.2d 1107, 1111 (1996) (concluding that the plaintiff's injuries sustained when swerving his vehicle to avoid a driver walking down the interstate to a gas station after the driver's vehicle ran out of gas arose out of the driver's use of his vehicle); *see also Baker v. Am. Family Mut. Ins. Co.,* 460 N.W.2d 86, 87 (Minn.App.1990) (noting that the parties stipulated that Baker's death arose out of the maintenance or use of a vehicle when she died of exposure and hypothermia after her vehicle became stuck in a ditch in subzero temperatures). In contrast to *Marklund,* where we concluded that the presence of the vehicle was only incidentally related to injury, we conclude here that the requisite causal connection between Dougherty's injuries and her use of the vehicle is established because it is a "natural and reasonable incident or consequence" of the use of a vehicle in Minnesota in the winter that a vehicle may become lodged in a snowdrift and the driver may attempt to seek safety, as Dougherty did here.

■ Next, we turn to State Farm's argument that Dougherty's intoxication constituted an act of independent significance that broke the chain of causation between the use of the vehicle and her injuries. We note that State Farm did not cite, either in its brief or at oral argument, any legal authority for this argument. Nor were we able to find any such authority. The court of appeals concluded that treating intoxication as an act breaking the chain of causation between Dougherty's injury and the use of her vehicle would "impermissibly blame her for her injuries," which would be inconsistent with the No–Fault Act. *Dougherty,* 683 N.W.2d at 858–59 (relying on Minn.Stat. § 65B.42(1) (2004)). We agree with the court of appeals. Section 65B.42(1) provides that automobile insurers are to make payments required by the No–Fault Act "without regard to whose fault caused the accident." The language of the No–Fault Act does not exclude coverage for drivers whose intoxication caused the accident. While driving under the influence is a serious problem in this state and may constitute a crime, as it did in this case, it is not this court's role to ignore the express language of the statute to accommodate the public policy concerns raised by State Farm. That is the legislature's role. *See Wichelman v. Messner,* 250 Minn. 88, 99, 83 N.W.2d 800, 812 (1957). Thus, we affirm the court of appeals and hold that Dougherty's intoxication does not constitute an act of independent significance that broke the chain of causation between the use of her vehicle and her injuries.

Affirmed.

ANDERSON, Paul H., Justice (concurring).

I concur with the majority's reasoning and result; nevertheless, I write separately because I believe it important to acknowledge how tempting it is to agree with the dissent's result given the troublesome facts in this case. But bad facts often make bad law.

The dissent concludes that Dougherty's injuries are not covered under Minnesota's No–Fault Act because her injuries were not caused by the "normal incidents of motoring." Because both the majority and dissent acknowledge that injuries occurring when a motor vehicle is stranded in dangerous conditions can give rise to no-fault benefits, the only possible basis for

the dissent's conclusion that the injuries did not arise out of the maintenance or use of a motor vehicle is that Dougherty was intoxicated—bad facts. Concluding, as the dissent does, that Dougherty's injuries are unrelated to the normal incidents of motoring would jeopardize legitimate claims to no-fault benefits when Minnesota motorists are stranded in dangerous conditions—bad law. Our No–Fault Act does not contemplate fault and intoxication is clearly related to fault. While Dougherty's intoxication should not be condoned, here it is simply not relevant to the No–Fault Act. What is relevant is that Dougherty's use of her vehicle placed her in a dangerous situation—stranded and exposed to the bitter cold—and she was injured while removing herself from that dangerous situation.

ANDERSON, G. Barry, J. (dissenting).

I respectfully dissent. It is challenging, to say the least, to review our jurisprudence and determine where to properly draw the line on a maintenance and use of a motor vehicle issue involving the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. § 65B.41–65B.71 (2004). Nonetheless, I conclude after a thorough review of the record that respondent's injuries are not reasonably attributable to the maintenance or use of a motor vehicle.

Minnesota's No–Fault Act provides that "every person suffering loss from injury *arising out of maintenance or use of a motor vehicle* * * * has a right to basic economic loss benefits." Minn.Stat. § 65B.46, subd. 1 (2004) (emphasis added). "Maintenance or use of a motor vehicle" is defined as "maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it." Minn.Stat. § 65B.43, subd. 3 (2004). The required causal connection between main-

tenance or use of the vehicle and injury is something more than that the vehicle was the mere situs of the injury, but is something less than proximate cause in the tort sense. *Continental W. Ins. Co. v. Klug,* 415 N.W.2d 876, 878 (Minn.1987).

While it is difficult to draw the line between covered injuries and injuries too tenuously connected to the motor vehicle to warrant the protection of the No–Fault Act, defining maintenance and use too broadly undermines the policies of the Act. In *Marklund,* we noted the importance of limiting the definition of injuries arising out of maintenance and use of a motor vehicle to those injuries that, according to the policies of the Act, should be allocated to the costs of motoring. *Marklund v. Farm Bureau Mut. Ins. Co.,* 400 N.W.2d 337, 339 (Minn.1987). We cited the Commissioner's Comments to the Uniform Motor Vehicle Accident Reparations Act, on which Minnesota's No–Fault Act is modeled, and stated:

> In some cases * * * it is arguable that courts have included accidents too far removed from the general activity of motoring and that a narrower construction of the term would be more consistent with the policy of this Act. Other than specifying that injury arise out of maintenance or use "as a vehicle," it has not been possible to define the general concept more specifically, so borderline cases are left to the courts, as they have been under current automobile policies.

*Marklund,* 400 N.W.2d at 339 n. 4 (citing Commissioner's Comments, Unif. Motor Vehicle Accident Reparations Act § 1, 14 U.L.A. 56 (1980)). Thus, some cases are simply too far removed from motoring to be included in the scope of the no-fault system. The No–Fault Act seeks to ameliorate the distress of *automobile* accident victims. *See* Minn.Stat. § 65B.42 (2004);

*Galle v. Excalibur Ins. Co.,* 317 N.W.2d 368 (Minn.1982).

We have said that causation may be framed in terms of whether the vehicle is "an accessory" to the injuries sustained. *Holm v. Mut. Serv. Cas. Ins. Co.,* 261 N.W.2d 598, 603 (Minn.1977). Stated in terms of exclusion, a vehicle that is not an accessory to the injury is a "mere situs" of the injury. *Nat'l. Family Ins. Co. v. Boyer,* 269 N.W.2d 10, 14–15 (Minn.1978).

Here, we cannot say that Dougherty's vehicle is "an accessory" to her injuries. Dougherty lodged her vehicle in a snow bank approximately 300 feet from her apartment building. Her injuries may be attributable to many different causes, including falling asleep outside with a wind chill of 45 degrees below zero, apparent inability to negotiate icy walking conditions or perhaps even her intoxication, but her use of the vehicle was entirely incidental to the injuries sustained.

The heart of the majority opinion is found in the conclusion that the causal connection between Dougherty's injuries and the use of her vehicle "is established because it is a 'natural and reasonable incident or consequence' of the use of a vehicle in Minnesota in the winter because a vehicle may become lodged in a snowdrift and the driver may attempt to seek safety, as Dougherty did here."

But there is no precedent remotely supporting Dougherty's claim for benefits under the Minnesota No–Fault Act and what little relevant law exists tends to support the conclusion that there is no causal link between Dougherty's injuries and her use of the vehicle. For example, in *Marklund,* as the majority notes, we concluded that the slip and fall injury was a result of a premises hazard and there was no causal connection to the maintenance of a motor vehicle. *Marklund,* 400 N.W.2d at 341. Marklund was walking to a cashier to pay for gasoline he had pumped when his slip and fall accident occurred. *Id.* at 340. Here, Dougherty's injuries also resulted from a premises hazard—icy walking conditions—encountered as she walked from her disabled vehicle to her apartment building.

In *Holm,* a police officer pursued a plaintiff in a municipal police car, left the vehicle and committed a battery on the plaintiff. 261 N.W.2d at 599, 602. Noting that the police officer "used the police car only as a means of transportation to the scene of the arrest and battery," and that the officer was "physically separated from the vehicle" at the time of injury, we held that the vehicle was not an "accessory" to the battery and thus the causal connection was broken. *Id.* at 603–04.[1] Indeed, in the present dispute, Dougherty not only left the vehicle, she locked the doors of the vehicle, arguably abandoning it, a circumstance not present in *Holm.*

I acknowledge that *Holm* involved an intentional battery not present here and thus the comparison is far from exact; *Holm* and Dougherty's circumstances, however, share this in common—the injury at issue was not attributable to the use of a motor vehicle. While it is certainly possible to envision fact patterns that involve stranded motor vehicles in dangerous circumstances, and a resulting conclusion that notwithstanding separation from the vehicle benefits under the Minnesota No–Fault Act are awardable, Dougherty's injuries were not caused by anything remotely

---

1. The question of maintenance or use of the police vehicle in *Holm* involved the city's liability insurance policy and not the Minnesota No–Fault Act. We have stated that, as opposed to private insurance contracts, a narrower definition of maintenance and use under the No–Fault Act serves the policies of the Act. *See Marklund,* 400 N.W.2d at 339.

related to the normal incidents of motoring and extending the protection of the No–Fault Act to these circumstances eviscerates the policies of the Act.

I conclude that Dougherty's injuries are not the "natural and reasonable incident or consequence" of her use of her motor vehicle and I would reverse the court of appeals.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice G. Barry Anderson.