*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0343**

Randall Dahler,
Appellant,

vs.

Auto-Owners Insurance Company,
Respondent.

**Filed December 8, 2014
Reversed and Remanded
Chutich, Judge**

Benton County District Court
File No. 05-CV-13-557

Michael A. Bryant, Bradshaw & Bryant, PLLC, Waite Park, Minnesota (for appellant)

James S. McAlpine, Garin L. Strobl, Quinlivan & Hughes, P.A., St. Cloud, Minnesota
(for respondent)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross,

Judge.

# U N P U B L I S H E D   O P I N I O N

**CHUTICH**, Judge

Appellant Randall Dahler appeals summary judgment in favor of respondent Auto-

Owners Insurance Company. He contends that the district court erroneously found that

the injury he received in the course of medical treatment for his automobile-related injury

did not arise out of his use of an automobile and therefore was not covered by his no-fault

insurance.  Because an injury directly caused by an adverse reaction to the medical treatment of a no-fault-covered injury arises out of the use of a motor vehicle, we reverse and remand.

**FACTS**

On February 24, 2009, appellant Randall Dahler went to his truck to leave for work.  Upon opening the door, Dahler placed one foot on the truck's running board; his other foot slipped and Dahler fell backwards on his back and buttocks.  Although he went to work, Dahler soon began to feel pain in his back and had difficulty walking.  After two months of chiropractic therapy and continued pain, Dahler was referred to his primary physician.

Medical imaging revealed that Dahler had a pinched nerve and inflammation in his back.  Dahler was then referred to another doctor, who recommended steroid injections to treat his back problems.  In July and August 2009, Dahler received steroid injections in his lower back.  After the injections, Dahler began experiencing symptoms of Guillain-Barré syndrome,[1] and Dahler's primary physician diagnosed him with the disease.

An independent medical examiner opined, to a reasonable degree of medical certainty, that the "steroid injections that were given for [Dahler's] back pain following

---

[1]  "Guillain-Barré syndrome (GBS) is a rare disorder in which a person's own immune system damages their nerve cells, causing muscle weakness and sometimes paralysis. [The syndrome] can cause symptoms that usually last for a few weeks. Most people recover fully from [the syndrome], but some people have long-term nerve damage. In very rare cases, people have died of [the syndrome], usually from difficulty breathing." *Guillain-Barré Syndrome (GBS)*, Centers for Disease Control and Prevention, http://www.cdc.gov/flu/protect/vaccine/guillainbarre.htm (last updated Nov. 24, 2014).

2

the injury of February 24, 2009 were related to the back injury at that time . . . ."[2] Respondent Auto-Owners Insurance Company, with which Dahler had an auto insurance liability policy, reimbursed him for his out-of-pocket expenses for the treatment of his back injury, including the injections. But Auto-Owners also informed Dahler that it would not pay any expenses for either the syndrome or missed work related to the syndrome under Dahler's no-fault policy.

In June 2012, Dahler sued Auto-Owners. Dahler alleged that the medical expenses arising out of the treatment of the syndrome should be covered by his no-fault insurance.

Auto-Owners moved for summary judgment, arguing that the syndrome did not arise from the use or maintenance of an automobile and therefore was not covered under Minnesota Statutes section 65B.44 (2012) of the Minnesota No-Fault Automobile Insurance Act (no-fault act). For purposes of the summary-judgment motion only, the parties agreed that the steroid injections directly caused the syndrome.

The district court granted summary judgment to Auto-Owners. Relying on the factors in *Continental Western Insurance Company v. Klug*, 415 N.W.2d 876 (Minn. 1987), the district court determined that the syndrome did not arise out of the maintenance or use of an automobile. The district court reasoned that the truck was not actively connected to the injury and that the fall from the truck was not a substantial factor in causing the syndrome. The district court further reasoned that Guillain-Barré

---

[2] The doctor further opined that the injections did not cause the syndrome, but this factual issue was not raised by Auto-Owners in its summary-judgment motion.

syndrome "caused by non-negligent medical treatment for a motor vehicle related injury is not a foreseeable, natural, and reasonable consequence of motoring." This appeal followed.

## D E C I S I O N

On appeal from a grant of summary judgment, this court asks two questions: (1) whether any genuine issues of material fact exist and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). Here, the parties agree that no genuine issues of material fact are present.

Dahler asserts that the district court erred because his automobile-related injury necessitated the steroid injections, which in turn caused the syndrome. He argues that this connection shows that treatment for the syndrome relates to his use of an automobile. Auto-Owners counters that no causal relationship exists between the syndrome and the motor vehicle. It further argues that, even if there is a causal relationship, the steroid injections were an act of independent significance that broke the causal link. Finally, Auto-Owners argues that because the vehicle was not the situs of the injury, no relief is available. Because a causal link exists between the use of the motor vehicle and the syndrome, which was not broken by the non-negligent medical treatment,[3] we reverse and remand.

---

[3] Neither party argues that the injections Dahler received were improper, negligent, or medical malpractice.

### *Arising Out of Maintenance or Use of an Automobile*

The no-fault act provides medical expense benefits for injuries "arising out of maintenance or use of a motor vehicle." Minn. Stat. § 65B.46, subd. 1 (2012). "Maintenance or use of a motor vehicle" includes "occupying, entering into, and alighting from it." Minn. Stat. § 65B.43, subd. 3 (2012). Whether an injury arises out of the maintenance or use of a motor vehicle is a question of law that this court reviews de novo. *Dougherty v. State Farm Mut. Ins. Co.*, 699 N.W.2d 741, 743 (Minn. 2005).

Determining whether an injury arises out of the use of a vehicle is a recurring legal question that defies a simple test. *Klug*, 415 N.W.2d at 877. Each case turns on the specific facts presented. *Id.* at 877–78. The *Klug* court set forth three general factors to consider when addressing this issue: first, the court examines the extent of causation between the automobile and the injury. *Id.* at 878. Second, the court considers whether an act of independent significance occurred that broke the causal link between use of the vehicle and the injuries inflicted. *Id.* If these two factors are met, the court then must consider what type of use of the automobile was involved. *Id.*

#### A.    *Extent of Causation*

A causal connection between the injury and the use of a vehicle "is established if the injury is a natural and reasonable incident or consequence of the vehicle's use." *Dougherty*, 699 N.W.2d at 743 (quotation omitted). The causal connection must be reasonably apparent. *Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975).

In examining this factor, courts consider whether the vehicle was an "active accessory" in causing the injury. *Dougherty*, 699 N.W.2d at 743 (quotation omitted). This analysis does not require that the vehicle "actively *cause* the damages; rather, the requirement is satisfied if the injury occurred because the vehicle's use is actively *connected* with the injury." *Illinois Farmers Ins. Co. v. Marvin*, 707 N.W.2d 747, 752–53 (Minn. App. 2006).

"This causation standard requires something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Dougherty*, 699 N.W.2d at 743 (quotation omitted). The phrase "arising out of" is broadly construed, *id.* at 744, and has been interpreted to mean "originating from," "having its origin in," "growing out of," or "flowing from," *Associated Indep. Dealers*, 304 Minn. at 182, 229 N.W.2d at 518 (quotation omitted).

The district court here noted, and the parties agree, that Dahler's back injury arose out of his use of a motor vehicle because he sustained it while entering his truck. Medical expenses for treating that injury were properly covered under his no-fault policy. The issue here is whether the requisite causal connection exists between Dahler developing Guillain-Barré syndrome and his use of the motor vehicle. We conclude that it does.

But for the accident and resulting back injury, Dahler would not have sought medical treatment that resulted in the syndrome. To be sure, "but for" causation has been rejected in Minnesota in tort cases. *See Harpster v. Hetherington*, 512 N.W.2d 585, 586 (Minn. 1994). But the no-fault act "causation standard requires something less than

6

proximate cause in the tort sense." *Dougherty*, 699 N.W.2d at 743 (quotation omitted). Moreover, the connection between the vehicle and the syndrome is also "reasonably apparent." *See Associated Indep. Dealers*, 304 Minn. at 182, 229 N.W.2d at 518. Dahler's truck may not have actively *caused* the syndrome itself, but that is not required; instead, the truck must be "actively *connected* with the injury." *Marvin*, 707 N.W.2d at 752–53.

Furthermore, courts construe the phrase "arising out of" broadly. *Dougherty*, 699 N.W.2d at 744. This phrase can mean "originating from," "having its origin in," "growing out of," or "flowing from." *Associated Indep. Dealers*, 304 Minn. at 182, 229 N.W.2d at 518 (quotation omitted). Because Dahler's use of the vehicle caused his back injury, and medical treatment for that injury caused him to develop the syndrome, the syndrome grew out of and flowed from his use of an automobile. The required casual connection between the use of an automobile and the injury in question is therefore met.

### B.     Act of Independent Significance

The second *Klug* factor determines whether an act of independent significance broke the causal link between use of the vehicle and the injury. *Klug*, 415 N.W.2d at 878. This factor is tied to the first factor: although a causal connection exists if "the injury is a natural and reasonable incident or consequence of the vehicle's use," *Dougherty*, 699 N.W.2d at 743 (quotation omitted), an independent intervening act breaks the causal chain when it "is not a foreseeable risk[] associated with the use of the covered automobile." *Lindsey v. Sturm*, 436 N.W.2d 788, 790 (Minn. App. 1989).

7

Auto-Owners asserts that the steroid injections are acts of independent significance that break the causal connection between Dahler's back injury and the use of his truck. After carefully reviewing the record, we disagree.

We conclude that administration and receipt of the steroids shots that allegedly caused Dahler's syndrome cannot be viewed as "acts of independent significance" when they were deemed appropriate medical steps in the treatment of Dahler's back injury. The Independent Medical Examiner specifically opined that the "steroid injections that were given for [Dahler's] back pain . . . were related to the back injury at that time . . . ." The cost of these injections were paid for by the insurance company and they were undertaken to remedy an injury that arose out of the use of an automobile.

Since the possibility of receiving medical treatment is a well-known risk associated with motoring, *see* Minn. Stat. § 65B.48, subd. 1 (2012) (requiring that all motor vehicle owners maintain a no-fault insurance policy), the requisite connection exists between Dahler's use of the truck and the injuries that he sustained when receiving treatment for his back injury. *Cf. Edwards v. State Farm Mut. Auto. Ins. Co.*, 399 N.W.2d 95 (Minn. App. 1986) (recognizing connection between use of a vehicle and injuries "when the injuries arise from a risk associated with motoring"), *review denied* (Minn. Mar. 13, 1987).

At trial, the parties will vigorously dispute whether Dahler's Guillain-Barré syndrome was in fact caused by the steroid injections and we express no opinion as to the merits of Dahler's claims. On the record before us, however, receiving these steroid

8

shots is not an act of independent significance breaking the causal chain between Dahler's injury and the use of his truck.

### C. *Type of Use of the Automobile*

If the first two factors are met, a court must consider what type of use of the automobile was involved. *Klug*, 415 N.W.2d at 878. Although not discussed by the district court, we conclude in our de novo review of the undisputed facts that this factor is met as well. The parties do not dispute that Dahler's back injury occurred while entering his truck, a use covered by the statute. *See* Minn. Stat. § 65B.43, subd. 3. Based on our analysis above, we conclude that a nexus exists between the syndrome and the use of an automobile for transportation purposes.

Finally, we note that other states with similar no-fault laws have considered analogous cases and have reached the same conclusions. *See Haff v. Hettich*, 593 N.W.2d 383, 391–92 (N.D. 1999) (holding that no-fault benefits extend to those who receive negligent medical treatment for injuries sustained in an automobile accident); *Varner v. Nationwide Mut. Ins. Co.*, 489 A.2d 918, 919–20 (Pa. Super. Ct. 1985) (finding that an injury sustained as a result of negligent medical treatment of an automobile-related injury is covered by no-fault insurance). Although these cases are not binding upon us, their reasoning is persuasive.

In sum, because a causal connection exists between the Guillain-Barré syndrome and Dahler's use of a motor vehicle that was not severed by the medical treatment he received, we reverse the grant of summary judgment in favor of Auto-Owners and remand the case for further proceedings.

**Reversed and remanded.**