McKEIG, Justice (dissenting).
In cases challenging the sufficiency of the evidence, we do not reverse "if the jury, acting with due regard for the presumption of innocence and for the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was proven guilty of the charged offense." State v. Taylor , 650 N.W.2d 190, 206 (Minn. 2002). "[O]ur unwillingness to overturn [jury verdicts] without significant justification" reflects the substantial "deference we accord jury verdicts." State v. Jones , 556 N.W.2d 903, 913 (Minn. 1996). In this case, the court overturns the jury's verdict based on its conclusion that the circumstances proved support a reasonable inference that appellant Jose Alarcon did not know that his living arrangements at his primary residence, a motel, had ended on April 3, 2015. In my view, such an inference is unreasonable because Alarcon's friend L.H.[1] lived in a room at the same motel, she and Alarcon "hung out almost every day," she lent her car to Alarcon on April 6, and later that day Alarcon picked her up at the motel. Moreover, even if such an inference was reasonable, knowledge of a third-party's action is not decisive in analyzing whether a person knows his living arrangement at his primary address has ended. I, therefore, respectfully dissent.
The State did not present any direct evidence that Alarcon personally saw the "boot" on the doorknob of the motel room or the note posted on the door of the motel room that read: "Mr. Alarcon, your rental [sic] is due today at 11 a.m. It was not paid due to declined credit card. We have secured your room, and to gain access to the room and your property, payment must be made." But the absence of direct evidence does not end the analysis because the law does not prefer direct evidence to circumstantial evidence. 10 Minn. Dist. Judges Ass'n, Minnesota Practice-Jury Instruction Guides, Criminal , CRIMJIG 3.05 (6th ed. 2015).
A circumstantial-evidence review involves two steps. First, the appellate court must "identify the circumstances proved." State v. Al-Naseer , 788 N.W.2d 469, 473 (Minn. 2010). Even when conducting a stricter review of circumstantial evidence, we recognize that " 'a jury is in the best position to evaluate the circumstantial evidence surrounding the crime.' " State v. Olhausen , 681 N.W.2d 21, 26 (Minn. 2004) (quoting State v. Race , 383 N.W.2d 656, 662 (Minn. 1986) ). Thus, at this step, the court " 'defer[s] ... to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State.' " Al-Naseer , 788 N.W.2d at 473 (quoting *651 State v. Andersen , 784 N.W.2d 320, 329 (Minn. 2010) ). Applying that standard to the record in this case, the circumstances proved are as follows.
On December 15, 2014, Alarcon moved to a motel in Albert Lea. He registered the motel's address as his "primary address." Alarcon rented the motel room by the week and agreed to pay his rent in advance. As part of the agreement, Alarcon gave the motel manager a relative's credit card number, which the manager used to "run the credit card payment" each week. Between December 2014 and April 2015, Alarcon paid his rent without incident. In April 2015, Alarcon and his friend L.H., who lived in a room at the same motel, were spending time together "almost every day."
At 11 a.m. on April 3, 2015, the manager ran the credit card number and payment was declined. Alarcon was not "on the property at that time," but his personal belongings were in his room, unpacked. The manager placed a "boot" on the doorknob that prevented Alarcon from re-entering his room; he also left a note on the door that read: "Mr. Alarcon, your rental [sic] is due today at 11 a.m. It was not paid due to declined credit card. We have secured your room, and to gain access to the room and your property, payment must be made." The manager did not have any contact with Alarcon that day. After waiting 24 hours, the manager instructed his staff to pack up Alarcon's belongings and place them in storage so the room could be rented to another customer.
On April 6, 2015, L.H. lent Alarcon her car. Later that day, Alarcon picked her up at the motel.[2] They went to the home of an acquaintance in Albert Lea. About 20 minutes after they left that home, a police officer stopped L.H.'s car for a minor traffic violation. L.H. was driving and Alarcon was in the back seat. L.H. told the officer that Alarcon had picked her up at the motel. Alarcon was arrested on unrelated charges. At some point after April 6, 2015, Alarcon called the motel manager to arrange to pick up his belongings, and Alarcon retrieved his belongings 2 weeks later.
Having identified the circumstances proved, the next step in a circumstantial-evidence review is to determine whether circumstances proved, when viewed as a whole, are consistent with a reasonable inference that the accused is guilty and inconsistent with any rational hypothesis except that of guilt. Al-Naseer , 788 N.W.2d at 474. In my view, when the circumstances proved are viewed as a whole , they do not support a reasonable inference that Alarcon did not know that his living arrangement had been terminated during the 3-day period between April 3 and April 6, 2015. This is especially true because L.H. lived in a room at the same motel , she and Alarcon "hung out almost every day," she lent her car to Alarcon on April 6, and later that day Alarcon picked her up at the motel. It is theoretically possible *652 that (1) between April 3 and 6, Alarcon "hung out almost every day" with L.H. without ever being in or near L.H.'s motel room, and (2) on April 6, L.H. drove her car from the motel to another location where she lent it to Alarcon and then walked back to her motel room where Alarcon picked her up later that same day. But such conjecture is not a basis for overturning a jury's verdict. State v. Cox , 884 N.W.2d 400, 412 (Minn. 2016) ("We will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture."). Because the majority's analysis of the second step of circumstantial-evidence review fails to acknowledge the circumstances proved in connection with Alarcon's ongoing contact with L.H., I dissent.
Moreover, even if the circumstances proved supported the court's analysis of the second step of circumstantial-evidence review, I do not agree with the court's focus on knowledge of the actions of third parties in this case. Knowledge of third-party action is not decisive of whether a person knows his living arrangement at his primary address has ended. In my view, a person can know that his living arrangement at his primary address has ended even if he is completely unaware of third-party actions that end the arrangement.
The facts here illustrate that point. Even ignoring the actions of the motel manager, Alarcon's actions provide enough evidence for a jury to reasonably conclude that he abandoned his living arrangement at the motel on or about April 3, 2015. The length of the rental period is significant in determining whether Alarcon's three-and-a-half-day absence from the motel room demonstrates that he abandoned his living arrangement at the motel. If the rental period had been a month or a year, the probative value of a three-and-a-half-day absence would have been minimal. But in this case the three-and-a-half-day absence is highly probative on the issue of whether Alarcon abandoned his living arrangement at the motel because the absence constitutes half of the rental period. Had Alarcon been absent for half of a year-long rental period, one would be hard pressed to argue that the 6-month absence did not support a jury finding that he had abandoned his living arrangement at the motel. But in its decision today, the court announces a broad rule that would effectively preclude such a finding. Under the newly announced rule, if your tenancy is terminated and you do not know that it is terminated, you have not, in fact, left your primary address. The new rule illustrates the old adage "bad facts often make bad law." Dougherty v. State Farm Mut. Ins. Co. , 699 N.W.2d 741, 746 (Minn. 2005) (Anderson, Paul, J., concurring).
For these reasons, I respectfully dissent.

While Alarcon and L.H. were "friends" who "hung out almost every day" in April of 2015, L.H. testified at trial that Alarcon did not become her boyfriend until June of 2015. They were still in a relationship when L.H. testified.

As the majority notes, L.H.'s testimony is inconsistent with Alarcon picking her up at the motel. We view all evidence in a light most favorable to the jury verdict because "the jury is in the best position to weigh the credibility of evidence and thus determine[ ] which witnesses to believe and how much weight to give their testimony." State v. Moore , 481 N.W.2d 355, 360 (Minn. 1992). When a witness testified to something different from her statement to the police, we assume that the jury believed the version of events that supports the conviction. See State v. Pieschke , 295 N.W.2d 580, 584-85 (Minn. 1980) (viewing the evidence in a light most favorable to the conviction and holding that the jury was entitled to believe witnesses' prior statements, which had been admitted as substantive evidence, when their testimony at trial was inconsistent with those statements). Here, the version that supports the jury's guilty verdict is that Alarcon picked L.H. up from the motel.